Samuels, J.
A plaintiff who comes into a court of .equity asking the new trial of an issue at law, on the ground of having discovered evidence after the trial, must show that he has not been guilty of laches in making the discovery ;.that the evidence is material to the issue; that it is not merely cumulative, or in addition to other evidence of like import heard at the trial. In the view I take of this part of the case, it is not necessary to consider any question other than the one whether the newly discovered evidence is cumulative, or whether it be such that no evidence of like substance was heard by the jury which tried the case. It was incumbent on the plaintiff to, make out his case in all its material parts; he should have shown what newly discovered evidence he proposed to offer on a new trial; also what evidence had been offered *517 at the former trial, to the end that the court might see that the new evidence was not of the like substance and import with any portion of that already heard. The plaintiff in this case in his bill alleges that upon the former trial it wás proved, “ that the said bond of three thousand eight hundred and fifty dollars was an accommodation bond, and that said Harnsbarger knew it to be so, but there was a failure of proof satisfactory to the court or jury, as it would seem from, the result, to show that he gave less for it than 'its par value, which, if proven, would have made the transaction clearly usurious and void.” This is not an allegation that no proof as to the particular fact stated had been offered, but only that the proof was “not satisfactory to the court or jury.” This is not enough to justify the interference of the court; for in every instance in which the jury finds against a party who has offered proof to establish a fact or a series of connected facts to sustain the issue on his part, it is because the evidence is not satisfactory to the jury. The plaintiff seems to have been wholly intent upon proving in this case the usury alleged in defense, and to have omitted the plain duty, required by his case, of showing either that there was no proof at all, or no proof on which a jury might have acted, in regard to the fact he now seeks to prove by the newly discovered evidence. He has utterly failed to meet the exigency of his case, by showing that the evidence is not merely cumulative.
In the argument here, the counsel on both sides relied upon the record in the suit at law, of which the evidence at the trial is made a part. I do not perceive that this record has been made part of the record in the chancery cause (now before us) whilst in the Circuit court; and it cannot therefore be properly looked into. If it were otherwise, I would say that proof of precisely the same import as that now proposed to be offered, was heard on the trial at law; and that the *518 new evidence is merely cumulative. Thus I am of ojiinion no new trial of the issue on the plea of usury should be directed.
The appellee seeks relief upon the further ground that his principal McCue in his lifetime had sold to Harnsbarger, the appellant’s intestate, a tract of land at the price of three thousand dollars, to be applied as a credit to the bond on which the judgment was obtained ; and that credit was not given for this price, but only for two thousand five hundred and twenty dollars, part thereof. Without stopping to comment upon the defects of the ajipellee’s proof of the fact alleged, or on the probable application of a portion of the price to another debt from McCue to Harnsbarger, it is enough to say that this is a defense which, if well founded, might have been made on the trial at law, and that no reason is shown for the failure to make it there.
The appellee seeks relief upon the further ground that the contract by which McCue sold to Harnsbarger the tract of land already mentioned, was extortionate and unconscionable, and wrung from the fear and distress of the debtor by his grasping creditor. If this were all true as alleged, it is impossible to perceive how the appellee can found thereon any-claim to relief in this case. At a proper time and between proper parties it might have been a question fit to be investigated whether the contract of sale should be rescinded ; yet this would afford no relief to the appellee whose obligation existed before the sale; he could not claim to have a new and different contract established, and credit for a larger amount placed on the bond.
The appellee seeks relief upon the further ground that by the contract for sale of land above mentioned, the sureties Kinney and Sowers were to be discharged from all liability; and further that Harnsbarger should indulge McCue for the balance of the debt as long as" Harnsbarger should live. These grounds for relief are *519 not, nor is either of them, established by proof. It is shown that pending the negotiation for the sale Harnsbarger did say that if McCue would sell the land on certain terms, McCue should never be troubled for the balance due on the bond whilst his (Harnsbarger’s) head “was hot;” that Harnsbarger offered to take a new bond for the balance with McCue’s sons as sureties, but that it was not given ; that McCue was anxious to relieve his sureties; that the deed was executed, and two thousand five hundred and twenty dollars credited on the bond. There is no proof whatever as to any thing said or agreed upon when the contract was finally consummated, and in the final execution of the contract the parties were aided by others who were fully competent to put their agreement into an authentic form. In the absence of proof to the contrary, we must hold that the bond still retained by Harnsbarger, with the credit endorsed but in nowise changed beyond placing the credit on it, showed all that was agreed to be done in regard to the bond or the parties to it; that the written evidence of what was done contains every thing upon which the parties had agreed.
The several grounds of relief above mentioned were not passed upon by the Circuit court. The decree of that court, it would seem, is founded upon the allegation in the amended bill, that Harnsbarger, on two occasions, without the consent of the surety, did agree to receive from McCue the principal a sum of money as interest on the bond in advance of the time at which the interest was payable; and that the interest on these several occasions was so prepaid and endorsed on the bond. The endorsements are found upon the bond giving credit for money paid for interest which was thereafter to accrue. The evidence of a witness proves that the money above mentioned was paid by him as the agent of McCue; that Harnsbarger did not require such prepayment, and that there was no ex *520 press contract for indulgence in consideration thereof; that McCue was in pecuniary embarrassment, and that forbearance on the part of Harnsbarger was very desirable ; that he had at times suffered the interest to fall in arrear, at which Harnsbarger was dissatisfied; that the prepayments were voluntary on the part of McCue, as well for the purpose of quieting Harnsbarger as of making amends for defaults in payment, of interest at other times; that these were the motives which prompted McCue to make the payments in advance, but Harnsbarger was not informed of those motives.
Although it is not expressly stated in the decree of the Circuit court upon what ground the relief was granted, yet there is enough to show that it was upon the ground last stated.
It must be conceded that the doctrine of equitable releases to sureties is too firmly settled in Virginia by the decisions of this court to be again drawn in question ; that an agreement for valuable consideration between a creditor and a principal debtor, whereby the creditor, without the consent of the surety, contracts to forbear for a definite time the collection of his debt, is, in equity, a release of the surety, cannot now be doubted. Yet when the attempt is made to bring a case of different facts within the principle of those decisions, we may well look into the principle itself to see whether its intrinsic justice and conformity with the general principles of equity require that it should be extended to a new class of cases. The decisions heretofore made have all proceeded upon the theory that by the contract for forbearance the surety would be subjected to liability for a longer time than that prescribed in his original obligation;' that his right of substitution to the rights and remedies of the creditor would be impaired in case he paid the debt; and especially because the surety is thereby prevented from resorting to ■& bill quia timet, or a notice to the *521 creditor to collect the debt. An agreement between creditor and debtor for forbearance is no bar to an action at law, unless it be a covenant never to sue, which is equivalent to a release to the party with whom the covenant is made. Begarding the subject as the courts of law regard it, a contract for indulgence would not delay a suit for the debt, and the surety might avail himself of his remedies to enforce the collection thereof, and thus obtain exoneration from liability. Ward v. Johnson, 6 Munf. 6; Steptoe's adm'rs v. Harvey's ex'ors, 7 Leigh 501; Dovers v. Doss, 10 Gratt. 252.
Courts of equity, however, do interfere in any case in which the creditor and principal debtor, without the assent of the surety, make a contract for a consideration, however small, to delay the collection of the debt for a time, however short, and as it seems, relieve the surety; and this without enquiring whether the obligation of the surety has been varied in any appreciable degree, or whether his remedies, for all practical purposes, have remained unimpaired. This doctrine is founded upon the hypothesis that the principal debtor might enjoin a suit brought in violation of the contract for indulgence, and thus specifically enforce that contract. If there be no surety, a contract for indulgence would be enforced in equity only in a case in which the general principles of the court require that such relief should be given; that is, in case adequate relief may not be had at law: yet, if a surety be bound, then the debtor is held to have the right, in all cases, to enjoin until the delay contracted for has been enjoyed; and the surety is thereby held to be discharged because of the change in his obligation, and the suspension of remedies whereby he might have sought exoneration. See 2 Bob. Prac. (old ed.) 134, and the cases there cited.
The case before us differs from all others decided in *522 this court, in this, that no promise for indulgence was expressly given or contracted for; that the debtor having been in default in paying the interest theretofore due, made these prepayments as in some sort a compensation for his former remissness; and further in the hope of propitiating the creditor to give future indulgence. From these facts the attempt is made to imply a contract that Harnsbarger should postpone the collection of the debt to the time when the principal of his debt should have earned the interest so paid in advance. I am of opinion that such implication is strained and unjust, and at variance with the facts as shown in evidence.
In the argument here the counsel cited many cases decided in different courts on the question whether the isolated fact of prepayment of interest on a debt already due would of itself justify the implication of a contract for indulgence, whereby sureties would be entitled to a release in equity. Some of these cases are in conflict; others of them were decided upon the peculiar laws of the states in which they were made, and could afford no aid in the decision of a case in this state. Not regarding this as a case of that kind, I deem it unnecessary to consider the question. It is the duty of the court to declare the law upon the case as it stands, and not as it would be if some of the facts did not appear therein. It will be the time to decide this much controverted question when it shall arise in some case depending for its decision upon the solution thereof.
I am of opinion to reverse the decree, to dissolve the injunction, and dismiss the bill.
The other judges concurred in the result.
Decree reversed.