THOMPSON, J.,
delivered the opinion of the court:
An exception was indorsed by the counsel of Ward, in the court below, on the deposition of Tho. A. H. Evans, the principal debtor, taken by the plaintiffs, “because the witness is incompetent, and for other reasons ^apparent on the face of the deposition.” I suppose we must interpret the exception as objecting to his competency on the score of interest. We are not informed by the record, whether the court sustained or overruled the exception ; nor can we infer from the decree rendered, whether the deposition was read and considered by the court in pronouncing its decision, or whether it was discarded as incompetent; because, in the view of the case presented and insisted on by the counsel of the appellee Ward, it was immaterial to the decision whether the deposition were read or excluded; whilst, in the view of the case presented and relied on by the counsel of the appellants, the testimony of that witness was all-important and decisive of the cause.
The counsel for the appellees, either from his confidence in his own view of the law bearing on the case, or from his conviction of the competency of the witness, did not base his argument upon the assumption of incompetency. On the contrary, I understood him as surrendering the objection ; and in doing so, he made no important concession, for it would be difficult to conceive how the principal debtor could have any legal interest in a question between his sureties and the creditor, as to whether or not the creditor had discharged them by extending indulgence to him without their knowledge or consent. But this is no longer an open question. It was settled by the Court of Appeals in 1835, in the case of Steele v. Boyd, 6 Leigh, 547. If it be said there is an element in this case not in that: in this, that here Evans, at the same time that he proves the contract for indulgence which is to operate a discharge of the sureties, proves himself entitled to two credits of $60 and $40 to the judgment, which constitutes an interest not appearing in Steele v. Boyd — the answer is, that how much or how little be due on the judgment in a controversy between the sureties and the creditor claiming their discharge, in virtue of a contract for indulgence, is not the question at issue, and of course could not, ought not, and would not be adjudged as between the ^creditor and the principal debtor upon the hypotheses that they shewed themselves entitled to their discharge; and if imprudently adjudged, as it would be, in a case wherein the debtor has been examined to prove the contract for indulgence, and in doing that incidentally proved himself entitled to the credits, which were the consideration of the indulgence, the debtor could not rely upon that judgment or decree procured by *826 his own testimony in a controversy between him and the creditor; but must rely upon testimony other than his own. Moreover, as a circumstance well calculated to remove even that objection to competency upon the score of a supposed interest, as well as to meet objections to his credibility, it is worthy of consideration, that the defendant admits enough in his answer to entitle Evans to the credits.
Upon the assumption, and, as I understand, the concession by the appellee’s counsel, that Evans was a competent witness and proved two contracts for indulgence and indulgence given in consideration of the usurious premiums of $60 at one time, and $40 at another, and that these contracts for indulgence and the indulgence in pursuance thereof would have absolved the sureties, had the contracts been valid and legally binding- upon the creditor, I understood him as relying solely and exclusively upon the invalidity of the contracts for the exemption of the appellee from the consequences resulting from a valid and’ legally binding contract for indulgence, and in support of that pretension he relied upon Chichester v. Mason, 7 Leigh, 244, as a case in point. If that were a case in point for such a proposition, I should yield obedience to it with great reluctance, and only because it was binding authority; because I should dissent toto coelo from its propriety; but that case settles nothing, and cannot be relied on as authority, because the judgment was the result, by operation of law, of an equal division of the court. The ground upon which the sureties claimed their discharge in that case *was an alleged agreement for indulgence, without specifying what time, and an agreement that the creditor would direct the sheriff not to proceed on the execution in consideration for an agreement to pay ten per cent, per an-num for the indulgence; and the creditor countermanded the levy of the execution, directing the sheriff not to proceed with it. The court below discharged the sureties, and upon appeal the decree was affirmed by the equal division of the court. Judge Carr, and Judge Brockenbrough who concurred with him, holding that the sureties were not discharged, neither bj the indefinite agreement to indulge in consideration of the promise to pay an usurious premium, nor by the act of the creditor in withdrawing or countermanding the execution ; whilst Judges Cabell and Brooke held, that the obligation of the surety was extinguished by the dealings of the creditor with the principal debtor, placing the discharge, not upon the distinct and substantive ground to indulge in consideration of the usurious premium alone, but upon the countermand of the levy and the withdrawal of the fieri facias, and release of the inchoate lien acquired thereby, based upon the mala fide dealing of the creditor with the principal debtor in extorting from him usurious gain as the consideration for the countermand. It had been decided before this case, in McKenny’s ex’or v. Waller, 1 Leigh, 434, and in Alcock v. Hill, 4 Leigh, 623, and has been since decided in Humphrey v. Hitt, 6 Gratt. 509, that a mere countermand of an execution by a creditor after it goes into the hands of the sheriff, but before it is levied, does not release a surety of the execution debtor. So that, in view of the decisions, both prior to and subsequent to the case of Chichester v. Mason, as to the effect of a mere countermand of the fi. fa., we are bodnd to interpret Judges Cabell and Brooke in this case, in affirming the decree of the court below, as substantially basing their judgment upon the force and effect of the mala fide agreement for indulgence, which was the ^inducement to the countermand or .withdrawal of the execution. The onlj reliance, then, of «the counsel of the appellee is the single opinion of Judge Carr, with the silent concurrence of Judge Brockenbrough; and, as it seems to me, the most that can be claimed as having been settled by that opinion, if, indeed, it had been concurred in by the whole court, is, that an agreement for indulgence, but without specifying for what time, (and therefore vague and indefinite in its character, ) in consideration of a promise to pay ten per cent, per annum for the indulgence, will not operate a discharge of the sureties —-and this, as I understand the grounds of the opinion, not only because of the vagueness and the indefiniteness of the agreement to indulge, but because an agreement, to produce such a result, must be one binding in law upon the parties and have a sufficient consideration to support it. “An agreement,” (says the judge, and very properly says, upon the authority of Walwyn v. St. Quintin, 1 Bos. & Pull. 652, and Arundel Bank v. Goble, Chitty on Bills, 447, note k.) “without consideration, is utterly void, and does not suspend for a moment the rights of any of the parties;” and in further illustration of that proposition, he cited the case of Philpot v. Briant, 4 Bing. 707, 15 Eng. C. L. R. 126, which decided, 'that if the executor of the acceptor of a bill of exchange really promise to pay the holder out of his own estate, provided he forbear to sue, and the holder forbear to sue in consequence, the promise being void under the statute of frauds, the drawer of the bill is not discharged by the holder’s having promised to give time, and having delayed to sue under such circumstances. And reasoning from the cases of agreements to indulge, void for want of consideration, he arrives at his conclusion, “if the agreements here spoken of (without consideration) do not discharge the surety simply because they have no valid consideration, how much stronger is the cases where the consideration is one which a statute declares illegal, and that all ’-bonds, contracts, covenants, conveyances or assurances, made on such consideration, are utterly void.”
Concede, for the sake of the argument, the correctness of the opinion, as applied *827 to the case under discussion, in the case in which it was delivered, which assimilates the case of indulgence extended in consideration of a promise to pay an usurious premium, to that of indulgence extended under a gratuitous promise, or an agreement without sufficient consideration, a nudum pactum, certainly, if analogous or relevant at all to our case, it is very far from being decisive or conclusive. Ours is a case where the indulgence has been given upon a consideration executed — an usurious premium, if you choose to call it so, given by the debtor and received by the creditor. Now, if instead of paying this sum, Evans had only promised to pay the usurious premium, it might with plausibility be said, that the hands of the creditor were not tied ; that he might, notwithstanding such an agreement, violate it and sue forthwith, and if the executory promise to pay the premium were relied on by way of plea in suspension at law, or by way of injunction in equity, the creditor, availing himself of the locus penetentias, might show the usurious consideration of the promise, and renounce its benefit and absolve the debtor from its performance; but where both contracts are executed, the indulgence given and the consideration for it paid, it seems to me, there is no ground left for the reason or the application of the rule belonging to the case of the executory agreement. I doubt exceedingly the propriety of the decision, when applied to the case of execu-tory agreements. Indeed, I may say, I dissent from it; for it subverts one of the fundamental maxims of our jurisprudence, that no man shall be allowed to take advantage of his own wrong. It is violative of another principle, that usury is a de-fence personal to the borrower, and before the Code of 1849 could not even be relied on or enquired into by the creditors of the borrower, and a fortiori, we should suppose, could *not be relied on by the user (that is, his own usury) for his defence in any case. Moreover, such a doctrine would lead to the strange incongruity, and I should say both moral and legal anomaly, that a conscientious, bona fide and humane creditor might enter into a contract for and give indulgence upon a consideration not vitiated by any illegality or extortion, and would thereby absolve the sureties of his debtor, although by the indulgence he might have benefited, instead of injuring, the debtor or his sureties; yet a usurious creditor, doing the same thing for a usurious or extortionate consideration, would escape the consequences of the rule, and retain both the usurious premiums and the liabilities of the sureties. Such a doctrine, instead of discountenancing usury and extortion, would be to encourage it by premiums and immunities denied to the conscientious, bona fide and humane creditor. I cannot give the sanction of my assent to such a doctrine.
Besides this conclusive ground of discharge in favor of the sureties, it is doubtful, to say the least, whether the record does not disclose another, not adverted to in the arguments at the bar on either side, and that is, the execution by Evans to Ward of his five negotiable notes on the 21st November, 1839, for the judgments, with interest calculated up to the day when the last became due and payable.
Numerous cases might be cited to show that securities of a particular character, such as bills of exchange, and promissory notes of the kind negotiable like bills of exchange, imply an agreement to suspend the enforcement of the demand on account of which they are taken, and carry with them a sufficient consideration to support it. If this were not so, the creditor who took the additional security, in the form of a bill or note, might, in consequence of the negotiable character of the latter, by negotiating it, subject the debtor to the payment of both the old and the new security. Therefore, it is well settled, that taking a bill or note on account of a debt is prima facie, if not an absolute, ^suspension of the debt, and consequently an absolute discharge of all parties whose liability for its payment is merely that of sureties or guarantors. Okie v. Spencer, 2 Whart. 253; Fillons v. Prentiss, 3 Denio, 512. In the two cases last cited, and the case of Walton v. Mascell, 13 M. & W. 452, it was held that the execution of such a security, on account of an existing debt, created an absolute and conclusive presumption — a presumption of law which could not be controverted — whilst others, perhaps, with better reason, have held that it was a question of intention, and that the suspension of the debt, and consequent discharge of the surety, depend on the- understanding of the parties at the time when the security is given. And though, in the case of Elwood v. Deifendorf, 5 Barb. S. C. 398, it seems to have been considered, that the prima facie effect of taking a note payable at a future day, on account of a pre-existing debt, is merely to create a collateral security for the debt and not to suspend it, and will not therefore operate a discharge of the surety without an express agreement for forbearance ; yet I consider the better opinion, and sustained by the general warrant of authority, that the debt will be suspended, unless there is evidence that the understanding and agreement of the parties was that it should not. Upon an analogous principle, if a bond creditor, by agreement with his debtor, take interest on his debt by anticipation, it will, in effect, be giving time to the debtor and will discharge the surety, since a court of equity would enjoin proceedings on the bond until the expiration of the time for which the creditor had received interest on the bond.
Such being the consequence, by presumption and operation of law, upon executing such new securities for an old or existing debt, unless averted by the understanding and agreement of the parties at the time that they should not operate a suspension or entitle the defendant to forbearance as a *828 matter of right, it is very clear, that the receipt of the six negotiable notes for *the bond, including principal and interest up to a future period, operated a suspension of the debt, and, by consequence, a discharge of the sureties, unless Ward has exempted himself from such a consequence by his answer, there being no evidence on the subject, the debtor Evans not having been interrogated on that point. Ward, in his answer, alleges, that he took the notes as collateral security, to be used or not as he might think fit. “But this defendant utterly denies that they were taken in satisfaction of said bond, and he also utterly denies that he made any agreement, promise, pledge or undertaking, verbal or written, to wait or give day of payment on said bond, upon any consideration whatever, much less in consideration of said notes being executed.” He alleges, that having taken the notes as collateral security, to be used or not as he saw fit, if he had thought fit, he could have pitched them in the fire and sued on the bond the moment they were received, without violating any agreement, promise or pledge made to Evans, or any other person, because there was no agreement, promise or pledge, asked or given. What he might have done is not, but what he did is, the more pertinent enquiry. He did not see fit to throw the notes in the fire and sue immediately, as he says he might have done, but he did see fit to retain and use them so far as to deposit them in bank for collection and to collect three of them. He does not allége, in his answer, much less prove, what is necessary to rebut or remove the presumption of law — if but prima facie even — which makes the new note operate a suspension of the old demand — to wit, an understanding or agreement of the parties that it should not so operate. The denials of his answer, that he made no promise, pledge or agreement to forbear or give day of payment, is one thing, and an understanding or agreement that the execution of the new notes should not operate a suspension, which was necessary to rebut he legal presumption, another and a very different thing — so that the legal presumption of suspension remains *un-contradicted and unrebutted, either by proof or by the answer, taking every word of it as true. The allegation that the notes were taken as collateral security, does not at all affect or impair the legal presumption. I think it highly probable, from the allegations and denials of the answer, and from the general ignorance of those unlearned in the law, of. the legal effect of such a transaction upon the liabilities of sureties, that both Ward and Evans were ignorant and unsuspecting of the consequences of their act, and that, whilst there was a tacit understanding or expectation, on the part of both, that the bond would be withheld from suit until after the maturity of the note, no express stipulation was deemed necessary for indulgence on the one hand, or that the giving of the notes should not operate a suspension or - forbearance of fight on the other, leaving the transaction subject to the legal presumptions, which imply a suspension of the old debt from the form and character of the new security.
But I must bring this discussion to a close. I have already said more on this point than I intended or was necessary, having arrived at a conclusion on the first ground of discharge, that thé securities are entitled to relief. Without, therefore, expressing any definite or settled opinion upon the point last discussed, I am very strongly inclined to the opinion that they are entitled to be discharged upon that ground, and if it were necessary for me now to pass upon that question, as at present advised, I should so decide.
TYLER, J., and CLOPTON, J., concurred.
DECREE.
On consideration whereof, the court is of opinion, that the said .decree is erroneous. It is therefore decreed and ordered, that the same be reversed and annulled, and that the appellee Berkeley Ward do pay unto the appellants their costs by them expended in the prosecution of their appeal aforesaid here: And this*court, proceeding to pronounce such decree as the circuit superior court should have pronounced, it is adjudged, ordered and decreed, that the interlocutory order of account entered in this cause on the 13th of November, 1843, be rescinded, and the report of commissioner Green made under the same be set aside; and that the injunction awarded the plaintiffs, the sureties of Tho. A. H. Evans, on the 28th of July, 1841, to injoin the defendant Ward, his agents, attorneys, and all others concerned, from all further proceedings as to them upon the judgment and execution in the bill mentioned against Thos. A. H. Evans, John C. Armistead, Robert E. Armistead, Bushrod Rust and William Rusf, for $1,000, with interest from the 19th of June, 1838, till paid, and $8 37 costs, subject to sundry credits endorsed on the execution, until the further order of the court, be made perpetual as to the plaintiffs, the sureties of said Evans, the said John C. Armistead, Robert Armistead, Bushrod Rust and William Rust, or as to the survivors and the personal representatives of such of them as have died. And it is further adjudged, ordered and decreed, that the defendant Ward do pay unto the plaintiffs their costs by them expended in the prosecution of the suit in the circuit court. But this decree is to be without prejudice to the appellee, the defendant in the court below, to sue out execution to enforce his judgment against Evans or his representatives, and upon any execution that may issue the clerk will endorse, “not to be levied upon the estates, goods, chattels or effects of John C. Armistead, Robert L. Armistead, Bushrod Rust and William Rust, because discharged and exonerated from the judgment by a perpetual injunction.”