EMERY ANDREWS vs. JAMES S. MARRETT.

*Surety—what will discharge.*

A surety has a right to have his liability remain precisely as he himself has fixed it; and any change in the contract or duty, for the performance of which he is holden, made without his consent, will discharge him.

Thus, where the holder of an over-due, non-negotiable promissory note, knowing one of the signers to be a surety, accepted from the principal debtor four new negotiable notes, three of which were payable at a future day, and the other on demand after date, and agreed that the original note should remain in his hands as collateral security for the payment of the new ones, all without the knowledge or consent of the surety; *Held*, that the effect of this arrangement was to enlarge the time of payment for a part of the debt, and to change the character and terms of the contract with respect to the whole of it, and that the surety was thereby discharged.

ON REPORT from the superior court.

ASSUMPSIT on a promissory note of the following tenor:

" $3000.                    PORTLAND, Oct. 22, 1866.

Six months after date, for value received, I promise to pay Emery Andrews three thousand dollars.

[Stamp.]                    JAMES E. FERNALD.
                    (On the back.)
                    Otis Cutler,
                    Jas. J. Marrett."

The remaining facts are sufficiently stated in the opinion.

*P. Barnes*, for the plaintiff.

*W. L. Putnam*, for the defendant.

WALTON, J.    A surety has a right to determine for himself on what terms, and for how long a time, he will be holden for the debt of another; and having himself fixed the terms of his suretyship, no one else has a right to change them without his consent. He has a right to have his contract remain precisely as he made it.

And if the debtor and the creditor change any of its terms, or prolong the time for its performance, without the consent of the surety, he is thereby discharged.

The defendant consented to become a surety on the note in suit by writing his name on the back of it. The note was not negotiable, and it was payable in six months from date. After the six months had expired, the plaintiff accepted from the principal debtor four new notes for the same debt, three of which were payable at a future day, and the fourth on demand after date, and all of them negotiable, the original note, as before stated, not being negotiable. And it was agreed between the plaintiff and the principal debtor, that the original note should remain in the plaintiff's hands as collateral security for the payment of the new ones. All this was done without the knowledge or consent of the defendant.

We cannot doubt that the legal effect of this arrangement was to enlarge the time of payment for a part of the debt, and to change the character and terms of the contract with respect to the whole of it; and that the defendant, being a mere surety, was thereby discharged.

The case is not distinguishable in principle from *Gould* v. *Robson*, 8 East, 576. In that case the holder of a bill of exchange, when due, took part-payment from the acceptor, and a new acceptance for the remainder, payable at a future day; and it was agreed (as in this case) that the original bill should remain as security for the payment of the new one. The court held, that the effect of this arrangement was to give time to the acceptor, and that the indorser, who was a mere surety, and no party to the agreement, was thereby discharged.

So in *Rees* v. *Berrington*, 2 Vesey, 540, the Lord Chancellor held, that where the obligee in a bond, with a surety, took notes from the principal, payable *in futuro*, without consulting the surety, the latter was thereby discharged.

So in *Fellows* v. *Prentiss*, 3 Denio, 512, the court held, that if the principal debtor give the creditor his note for the debt, payable one day after date, the surety is thereby discharged; and that it is

not competent for the creditor to prove that the note was intended as a mere memorandum, and was not to operate as an extension of the credit. To the same effect are *Bangs* v. *Mosher*, 23 Barb. 478; and *Myers* v. *Welles*, 5 Hill, 463.

So in *Okie* v. *Spencer*, 2 Wharton (Penn.), 253, where the holder of a promissory note, on the day it became due, accepted from the maker a check, dated six days afterwards, which was to be in full satisfaction of the note if paid at maturity, the court held, that this was a suspension of the remedy on the note for six days, and discharged the indorser as effectually as if it had been for six years.

In *Stedman* v. *Gooch*, 1 Espinasse, 3, Lord Kenyon said, that the law was clear that if a creditor is content to take a bill or note payable at a future day, he cannot legally commence an action on his original debt until such bill or note becomes payable.

So in *Walton* v. *Mascall*, 13 M. & W. 452, the court said it was established law that the acceptance of a negotiable instrument for and on account of an antecedent debt, operates as a suspension of payment of the debt till the note becomes due.

So in *Kendrick* v. *Lomax*, 2 C. & J. 405, where the plaintiff accepted a new bill for one that was then due, and before the second bill became due, sued the first, the court held the action could not be maintained; that when the plaintiff took the second bill he virtually agreed not to sue on the first till the second should become due. See, also, to the same effect, *Baker* v. *Walker*, 14 M. & W. 465; and *Withall* v. *Masterman*, 2 Camp. 179.

So in *Thomas* v. *Dow*, 33 Maine, 390, this court held, that the surety on a poor debtor's bond is discharged by a contract made for a valuable consideration, between the creditor and the debtor, without the knowledge of the surety, that the bond should be discharged if the debtor, at a time beyond the six months, paid part of the amount due. The ground of the decision is the same as in the cases already cited, namely, that the acceptance of the debtor's promise to pay at a future day, by necessary implication, operates as an extension of the time of payment till that day arrives. "If,"

said the court, "the obligees had instituted a suit upon the bond, the principal could have obtained relief in a court of equity by injunction; and the argument that the plaintiffs waived no right by the agreement, but retained the right to commence a suit at the expiration of the six months on the bond if forfeited, cannot be maintained. See, also, to the same effect, *Phillips* v. *Rounds*, 33 Maine, 357; and *Bank* v. *Mallett*, 42 Maine, 349; and same case, 34 Maine, 547.

That the defendant was a mere surety on the note in suit, and that the plaintiff knew such to be the fact when he took it, is satisfactorily proved. The defendant so testifies, and the plaintiff, though a witness at the trial, does not deny it. The manner of the defendant's signing, being upon the back of the note instead of upon the face, tends to the same conclusion. So, also, do the plaintiff's letters, which are in evidence in the case. In fact, his whole conduct, from the time when he accepted the note to the close of the trial, as shown by the evidence, plainly indicates that he knew that Fernald was the principal debtor, and that the defendant was only a surety. Such being the true relation of the parties, it was not competent for the plaintiff and the principal debtor to change the surety's liability without his consent. That such would be the effect of the new arrangement between them, if enforced, there can be no doubt. The effect of the new arrangement was, therefore, such as to discharge the surety.

*Judgment for defendant.*

APPLETON, C. J.; BARROWS, DANFORTH, and TAPLEY, JJ. concurred.