# Wheeling.

## SAYRE *et al. v.* KING *et al.*

### Decided December 23, 1880.

#### (MOORE, JUDGE, Absent.)

1. A new trial ought not to be awarded by a court of equity because of after discovered evidence, unless such evidence ought to produce a different verdict, and unless it was prevented from being introduced on the trial at law by fraud or by ignorance unmixed with negligence. And therefore a surety cannot rely on his ignorance of a substantial defence known to his principal, unless he alleges in in his bill and proves, that he took proper steps to ascertain from his principal or otherwise the true state of the case, or that he was prevented from so doing by circumstances not under his control.

2. If an obligee in a bond executed by a principal and sureties without the consent of the sureties make a parol contract, whereby he gives further time to the principal, the sureties are thereby discharged in equity, but not at law.

3. The taking of a bill or negotiable note for an existing debt is *prima facie* conditional payment thereof; but it may be shown by direct or circumstantial evidence, that the bill or negotiable note was taken either as an absolute payment or as collateral security merely; this however belongs to a branch of commercial law rather than to the common law.

4. If instead of commercial paper another *chose* in action, such as an unnegotiable note, a bond, an obligation to deliver goods at a future time, a mortgage or a deed of trust be given by the debtor to his creditor, such *chose* in action is *prima facie* not conditional payment but collateral security, though it too may be proven by either direct or circumstantial evidence to have been intended by the parties to be an absolute or conditional payment.

5. If a *chose* in action was received as absolute payment, it discharges the sureties in the original debt, and if received as conditional payment, and it is payable at a future time, it suspends during this time suit on the original debt, and therefore discharges the sureties of said debt, if taken without their consent. But if such *chose* in action or a deed of trust or mortgage is received as collateral security, though payable or forecloseable at a future time, it does not suspend the right of action on the original debt, and therefore does not discharge the sureties from liability, though taken without their consent, unless they prove by direct or circumstantial evidence, that there was an agreement to suspend the right or suit on the original debt in consideration of such collateral security.

Appeal from an order of the circuit court of the county of Jackson rendered on the 13th day of January, 1879, in a cause in said court then pending, wherein William H. Sayre and others were plaintiffs, and George S. M. King and others were defendants, allowed upon the petition of said plaintiffs.

Hon. Joseph Smith, judge of the seventh judicial circuit, made the order appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

George S. M. King, then sheriff of Jackson county, West Virginia, appointed John M. Burdett his deputy, who on January 27, 1868, executed his bond payable to George S. M. King, sheriff, in the penalty of $8,000.00 with the plaintiffs W. H. Sayre, Abel Sayre, Julius Campbell and one D. B. Sayre as his sureties, which bond was conditioned for the faithful and prompt discharge on the part of John M. Burdett, the deputy-sheriff, of all the duties of the office of sheriff in the township of Mill Creek and any other business undertaken or to be done by him, and in all matters done or undertaken to be done to save said King from loss. On September 25, 1871, King brought a suit on this bond in the circuit court of Jackson, and obtained on July 21, 1875, a judgment against all the obligors for $1,067.75 with interest thereon from July 21, 1875, till

paid and costs. A writ of error and *supersedeas* to this judgment was obtained from this court. It was affirmed April 27, 1878. The proceedings in this case sufficiently appear in the report of the opinion of this court in that case. See *King* v. *Burdett et al.*, 12 W. Va. 688. An execution was then sued out and levied by W. D. Somerville, deputy for D. S. Stevenson, who was a sheriff, on the property of W. D. Sayre, one of the defendants in said common law suit. Thereupon the sureties in this bond, other than D. B. Sayre, filed their bill and obtained from the judge of the circuit court of Jackson county an injunction against said King and said sheriff and his deputy, prohibiting them from enforcing the writ of *fieri facias* on said judgment.

The bill, on which this injunction was awarded, sets forth the above facts and alleges, that a large portion of the services rendered for King, the sheriff, by the deputy-sheriff, Burdett, the principal in said bond, were rendered not in the Mill Creek township but in the adjoining township of Washington, and this was done without the knowledge or consent of the plaintiffs, and most of the liabilities, for which this judgment was rendered, were for the defaults of the deputy-sheriff in the performance of these duties in the township of Washington, "and that these facts were unknown to the plaintiffs until some time after the rendition of said judgment." This portion of this bill was demurred to.

The bill further alleges, that on the 18th of June, 1872, J. M. Burdett by a certain deed entered into by said Burdett of the one part and John H. Riley, trustee, on the other part with advice and procurement of said King, conveyed all his property to said Riley, as trustee, upon certain trust for the benefit of said King, and the said King by said Riley, his attorney and trustee, executed said deed, and also the said Riley at the instance of said King, as such trustee, executed this deed; and said King did by this deed covenant with said Burdett, that he, the said King, would not at any time there-

after commence or prosecute any action or other proceeding against said Burdett for or by reason of any debt then due and owing to him, said King; and said King did further covenant with said Burdett, that in consideration of the execution of said deed he would not at any time thereafter prosecute any action or other proceeding against the securities of J. M. Burdett as deputy-sheriff, but that he would accept said trust-deed in full discharge and acquittance of said securities from all liability to him on account of their said suretyship. A copy of this deed of trust is filed with the bill as a part thereof; and it shows, that these statements of the bill were not true.

The deed is dated June 18, 1872; and by it John M. Burdett conveyed to John H. Riley a tract of two hundred acres of land, describing it, in trust to secure the payment of $1,908.03 evidenced by single bill executed by said Burdett to said King due October 1, 1872, and bearing interest from the date of the deed. The deed then concludes: "And it is understood and agreed, that in case the said John M. Burdett shall fail to pay the amount due by said note or any part thereof on the 1st day of October, 1872, that the said John H. Riley, trustee, shall expose the land hereby conveyed for sale in front of the court-house of Jackson county, West Virginia, for cash in hand on the day of sale, having first advertised the time, terms and place of sale by hand-bills posted at the front door of the court-house ten days before the day of sale." This deed was only signed by Burdett and Riley, the trustee; and there is in it no covenant of any kind.

Having made these false statements of the character of this deed the plaintiffs in their bill further say, that King by said deed of trust gave time to said Burdett from the 18th day of June to the first of October, 1872, and for some time thereafter in respect to the payment of said debt on his land as deputy-sheriff, all of which was done without the knowledge or consent of the plain-

tiffs, his sureties in said bond ; and they claim that they were thereby discharged from all liability as such sureties. The bill makes King, the sheriff of Jackson county, and his deputy, who levied the execution on this judgment, and Hugh Sayre and Isaac Sayre, heirs at law of D. B. Sayre, deceased, their co-surety, the defendants, and prays for the injunction, which was awarded, and for general relief.

King filed his answer to this bill, in which he sets out at some length the proceedings in the common law suit referred to, as they appear in the report of the case in 12 W. Va. page 688 to 698. He denies all the allegations in the bill in reference to the character of this deed of trust, which, we have stated, were shown to be false by the deed itself, and he denies, that he gave time to said Burdett in respect to the debt represented by said deputy-sheriff's bond, in which the plaintiffs were sureties. He alleges, that this deed of trust was merely a collateral security, which operated beneficially to the plaintiff. And that its being taken did not affect the remedy on said deputy-sheriff's bond, on which suit was then pending.

John M. Burdett on behalf of the plaintiffs deposed substantially, that when he gave this deed of trust, he felt himself in trouble by having gone surety for one Keeney, and he therefore called on King, had a settlement not very accurate with him of how much he owed him as his deputy sheriff. It was after calculation made out to be $1,908.03; and he gave his note therefor and a deed of trust on his farm. The note was payable October 1, 1872, and the deed given June 18, 1872. This deed was given to release his sureties in his bond to King, and to prevent his property being applied to pay the debt, in which he was surety for Keeney. He admits, that nothing was said between them as to the extension of time or release of his securities. The sureties were not informed at the time that this deed of trust was executed or anything about its intended execution. He also deposed to the fact, that many of the

taxes, for which he was delinquent, and for which the common law judgment was rendered, were taxes of persons living in Washington township, and that his sureties did not know that he had taken them to collect.

One witness, Frederick Stone, deposes, that King once told him, that Burdett had given him a deed of trust on his farm to release his, Burdett's, sureties. But he admits, that when his deposition was taken five years before, in stating this conversation he said, King said to him, that this deed of trust was given "to release or save his securities, he, witness, was not positive which."

William H. Sayre testified, that he lived in an adjoining county to Jackson about twelve miles from where Burdett, the defaulting deputy-sheriff lived, that he was his brother-in-law and did not know, that Burdett had collected taxes out of Mill Creek township, till after the common law judgment was rendered, nor did he know anything about the deed of trust, till after it was given.

Abel Sayre, another of the sureties, testified to the same facts. He lived within two miles of Burdett, the deputy-sheriff. He admits, that the tax receipts, on which the judgment in *King* v. *Burdett* was rendered, were filed in the suit, and that he took no steps to ascertain where the parties lived, who by these receipts appeared to owe these taxes, whether in Mill Creek or Washington township.

John M. Greer proved, that most of the tax bills, for the non-payment of which after they were collected, John M. Burdett's sureties were held responsible, were on persons who lived in Washington not in Clay township ; and that any one anything like acquainted with the people of Jackson could on a casual examination of the bills filed in this suit see at once, that a majority of these tax-payers did not live in Mill Creek township.

On behalf of the defendants King testified, that the settlement, which preceded the giving of this deed of trust on June 15, 1872, included nothing but the tax-

receipts he held of Burdett for the taxes of 1868, from which was deducted his receipts for moneys paid, which he produced. The balance on this account alone was $1,908.03. At that time the suit he, King, had brought against him and his sureties was pending; and in it was claimed not only the delinquency on these taxes of 1868 but also his delinquency on fee-bills and other things in his hands. He says, he don't know, that they really settled any thing. He retained all the receipts, upon which he held him responsible; and he retained all his receipts for money paid. This balance was struck as above stated and he, Burdett, gave King his note for it payable October 1, 1872. The common law judgment against Burdett and his sureties afterwards obtained included the delinquency for taxes of 1868 and for other moneys also received by him and not accounted for. He says, that there was no agreement or understanding, by which he took this note of him as a payment of the taxes of 1868 or for any other liability. He says, he took the deed of trust as additional security. The circumstances, under which it was executed, are thus stated by King: He, Burdett, came to see him and said the State had sued Keeney the late sheriff, and he Burdett, was one of his sureties, and he, Burdett, wished to settle up with him, King, and give him a deed of trust on his land or confess judgment; and thus to save his sureties. They agreed to meet in Ripley on a given day and have the matter attended to, he saying that if his land was to be sold, he did not want it to go to pay Keeney's debts but his own so as to save his sureties. He, King, did not agree to release his sureties in consideration of his executing this deed of trust. He did not surrender to him his bond as deputy-sheriff. There was no agreement made between them in regard to releasing his sureties or extending the time on the law-suit or suspending any proceedings on the same. The subject was never mentioned between them. The receipts of Burdett for taxes to be collected by him and his bond, on which he

got his common law judgment, were filed all the time in the papers in the common law suit, and are still, and were always open to the inspection of the defendants in that suit.

The deposition of Riley, the trustee, was also taken. He was counsel for King in the common law suit and filed with the declaration the bond sued on and the various receipts for taxes, &c., on which the plaintiff expected to recover; and on their face it was apparent to any one acquainted with the people of Jackson county, that a majority of the tax-payers, whose names were mentioned in these receipts, lived in Washington township. Shortly before the deed of trust was given, King and Burdett came to his office, Burdett said he had been sued as surety for Keeney, late sheriff of Jackson county, and he wanted to protect his own sureties in his bond to King, and he wanted them to have the benefit of his property, if it was to be sold, and therefore he wanted King to have a lien on his property by deed of trust or judgment. It was agreed between them, that there should be some statement of the principal matters between them. He could not say, whether it was only to include the taxes of 1868, and he does not know, what was taken into the account. They not getting through were to meet again at his office; and they did so. There were several interviews with the witness and several conversations about the matter between King and Burdett in his presence. He heard nothing said by either of them about any extension of time on Burdett's liabilities to King or about suspending proceedings in the suit at law then pending. Burdett was anxious to relieve his sureties by preventing the State getting the benefit of his property to pay Keeney's default. Neither Riley nor King did anything to procure the execution of the deed of trust.

The answer of King was replied to; and on the 18th of January, 1879, on notice to dissolve the injunction in vacation a motion to dissolve being heard, on the bill,

demurrer, and replication and these depositions the judge of the circuit court of Jackson county ordered the injunction awarded in the cause to be dissolved; and to this order an appeal has been awarded the plaintiffs by this Court.

*J. W. English* and *Tomlison & Polsley*, for appellants, cited the following authorities:

12 W. Va. 688; Gilmer 144; 3 Call 74; 2 Wall. 235; 9 Wheat. 680; 6 How. 296; 25 Gratt. 771; 10 Gratt. 252; 25 Gratt, 211; *Id.* 534; 6 Gratt. 524.

*Henry C. Flesher* and *John H. Riley*, for appellees, cited the following authorities:

2 L. Cas. Eq. 1372; 6 Johns. Chy. 479; 1 Johns. Chy. 320; 10 Gratt. 506; 9 Gratt. 255; 10 Gratt. 499; 3 W. Va. 195; 2 L. Cas. Eq. pt. 2, pp. 1372–1379; 18 Johns. 534; 4 Am. Dec. 627; 9 Gratt. 42; 2 L. Cas· Eq. 1382–1384; 6 How. 279; 2 Rand. 323; High Inj. § 835; 29 Gratt. 248–252; 27 Gratt. 205–207; 1 Greenl. Ev. §§ 86, 87, 96; 4 Am. Dec. 383.

GREEN, PRESIDENT, announced the opinion of the Court:

This record presents two questions. First, whether a court of equity ought to award to the appellants a new trial in the common law suit because of evidence discovered after its trial at law. In the case of *Zickefoose* v. *Kuykendall*, 12 W. Va. 23, this Court held, that "as a new trial should not be awarded by a court of equity because of after-discovered evidence, unless such evidence is not only material, but such as ought to produce an opposite verdict on the merits of the case, and unless it also appears, that the new evidence is such, that reasonable diligence on the part of the party asking the new trial could not have secured it on the former trial." In the opinion of the Court in *Smith* v. *McClean*, 11 W. Va. 668, the law on this subject is thus stated: "In a

Syllabus 1.

bill brought to obtain relief in the nature of a new trial the bill should allege, not only the discovery of new evidence, but also what that evidence is, that the court may see, that it is material in its object and not merely cumulative, corroborative or collateral, and also that it is such, that it ought to produce an opposite result on the merits. And the bill must do more than this; it must show that the evidence is such, that reasonable diligence on the part of the defendant could not have secured it at the former trial." On the same subject I may also refer to *Shields* v. *McClung*, 6 W. Va. 79; *Alford* v. *Moore*, 15 W. Va. 597; *Knapp* v. *Snyder*, 15 W. Va. 434; and *Harner* v. *Price, supra.* In the case of *Smith* v. *McClean*, 11 W. Va. 655, the court also laid down this principle: "A surety cannot rely on his ignorance of a substantial defence arising out of transactions between the plaintiff in the common law suit and the principal as a reason for opening a judgment against the surety, unless he alleges in his bill and shows by evidence, that he took proper measures to ascertain the true state of the case, and prepare his defence in the common law action, or that he was prevented by circumstances, which rendered it impossible to take such measures."

These decisions conclusively show, that the appellants in this case are not entitled to a new trial of the common law suit. The proper allegations to justify the court in giving such relief were not alleged in the bill; and if they had been, it is clear that the evidence utterly fails to shows a case in which they are entitled to this relief. The bond, which they were sued on, according to their own bill was conditioned not only for the faithful and prompt discharge by their principal, John M. Burdett, of all the duties of the office of sheriff in the township of Mill Creek, but also for the faithful and prompt discharge of any other business undertaken as sheriff by him. I understand from this bill that this bond bound the sureties in it for all taxes undertaken to be collected by Burdett as deputy-sheriff, whether the tax-payers re-

sided in Mill Creek township or not; and this, I presume, was the reason why the sureties permitted a large recovery against them in the common law suit for taxes collected by Burdett of persons, who did not reside in Mill Creek township. But even if they had not been responsible for his failure to pay over taxes collected of parties not residing in this township, they could get no relief in a court of equity under the circumstances of this case, because by the use of ordinary diligence in the defence of the common law suit they could without any difficulty have shown where the tax-payers lived. The names of the tax-payers, of whom Burdett had collected taxes, could by the most ordinary diligence in the common law suit have been ascertained by them, as the receipts of Burdett for the collection of these taxes of these parties were filed with the declaration and were at all times accessible to them and their counsel; and if they had been looked at ever so casually, any one acquainted in the county could have informed them, that a majority of these tax-payers did not live in Mill Creek township. If the appellant, did not know it before the trial of the common law suit, their ignorance can only be accounted for by gross negligence on their part or by a belief on their part and on the part of their counsel, that they were responsible for these taxes collected by their principal and not accounted for, no matter where the tax-payers resided.

The other question presented by this record is, whether the appellee, King, did by agreement with Burdett suspend his right of action against him and his sureties on his bond as his deputy sheriff without the consent of his sureties. If he did so, he thereby discharged his sureties from all liability on this bond. See *Shields & Mahon* v. *Reynolds*, 9 W. Va. 485; *Norris* v. *Crummey*, 2 Rand. 333–4; *Nesbit* v. *Smith*, 2 Bro. C. C. 579; *Reesse* v. *Berrington*, 2 Ves. Jr. 540. And the court of equity is the only court, in which this defence, in such a case as is presented by this record, could be made. The appel-

lants could not have pleaded in the common law suit, which was brought on this bond of Burdett and his sureties, that they as sureties were discharged by King, the plaintiff having made a parol agreement with their principal, Burdett, whereby he suspended his right of action on this bond for a time. See *Devers* v. *Ross*, 10 Gratt. 252 ; *Steptoe's adm'r* v. *Harvey's ex'r*, 7 Leigh 501 ; *Ward* v. *Johnson*, 6 Munf. 6. If therefore King did in point of fact enter into any contract with the principal in this bond, Burdett, whereby he agreed to suspend or did suspend his right to sue upon this bond for any time without the consent of the sureties in this bond, they were thereby discharged from all liability ; and as they could not rely on this defence in the common law suit brought against them, they had a right to have the collection of the judgments obtained against them on this bond enjoined and the court erred in dissolving it. But if King did not enter into any contract with Burdett, which suspended his right of action on this bond, then the court properly dissolved this injunction.

There are decisions to the effect, that if commercial paper, as a bill or negotiable note, payable at a future time be taken for an existing debt, the law implies from this transaction an agreement to wait till the bill or note matures, and it will therefore discharge the sureties for the existing debt, who had not consented to such arrangement. See *Okie* v. *Spencer*, 2 Wharton 253; *Mercer* v. *Lancaster*, 5 Barr 160 ; *Myers* v. *Welles*, 5 Hill 463; *Fellows* v. *Prentiss*, 3 Denio 512; *Bangs* v. *Mosher*, 23 Barb. 478; *Brooks* v. *Wright*, 13 Allen 72 ; *Anderson* v. *Marrett*, 58 Me. 539 ; *Appleton* v. *Parker*, 15 Gray 173.

But there are many cases, in which it is held, that the taking of such bill or note is only *prima facie* evidence, that it was taken as a conditional payment, and therefore that existing right of action on the original debt was suspended, and that it may be proven, that it was not so taken, but was taken as collateral security, in

which case the right of action on the original debt will not be suspended. See *Armistead* v. *Ward*, 2 Patt. & H. 504; *Elwood* v. *Deifendorf*, 5 Barb. 398; *Weakley* v. *Bell*, 9 Watts 273; *Shaw* v. *The Church*, 3 Wright 226; *Ripley* v. *Greenleaf*, 2 Vt. 129; *Pring* v. *Clarkson*, 1 B. & C. 14; *Wade* v. *Stanton*, 5 How. 631; *Paine* v. *Voorhees*, 26 Wis. 522; *Appleton* v. *Parker*, 15 Gray 173. But it must be observed, that this doctrine, that the giving of a bill or negotiable note is *prima facie* conditional payment, which operates to suspend the debt, seems to be more a branch of the commercial law than a part of the common law, and therefore where a single bill unnegotiable or a bond or mortgage or an assignment of chattels to be delivered at a future period has been taken for an antecedent debt, there is no legal implication of an agreement to forbear the collection of the antecedent debt; and unless such agreement is otherwise proven than by the mere proof of the taking of such single bill or other *chose* in action not commercial paper, the sureties for the original debt will not be discharged. See *United States* v. *Hodge*, 6 How. 279; *Emes* v. *Widdowson*, 4 C. & P. 151 (19 Eng. C. L. R. 316); *Twopenny* v. *Young*, 3 B. & C. 208 (10 Eng. C. L. R. 54); *Burke* v. *Kruger*, 8 Tex. 66. See also *Griffith* v. *Owen*, 13 M. & W. 58; *Bates* v. *Churchhill*, 32 Me. 31; *Elwood* v. *Deifendorf*, 5 Barb. 398; *Remson* v. *Graves*, 41 N. Y. 472; *Cruger et al.* v. *Burke et al.*, 11 Tex. 694; *Hamsbarger adm'r* v. *Kenney*, 13 Gratt. 520; *Oxley et al.* v. *Storer*, 54 Ill. 160; *Spangler* v. *Sheffer*, 19 P. F. Smith (69 Pa. St.) 255; *Hays* v. *Wells & Babbitt*, 34 Md. 512.

While some of these authorities, which we have cited in this opinion, cannot well be reconciled, an examination of them has led me to the conclusion, that these legal propositions are deducible from them. The taking of a bill or negotiable note for an existing debt is *prima facie* conditional payment thereof; but it may be shown by direct or circumstantial evidence, that the bill or negotiable note was taken as an absolute payment or as col-

lateral security merely ; but this is rather a branch of
the commercial law than a part of the common law.   If
instead of commercial paper another *chose* in action,
such as an unnegotiable note, a bond, deed of trust or
mortgage or an obligation to deliver goods be given by
the debtor to his creditor, such *chose* in action is *prima
facie* collateral security for the original debt ; but it may
be shown by direct or circumstantial evidence, that such
*chose* in action was received as an absolute or condi-
tional payment.   If any *chose* in action was received as
absolute payment of a preceding debt, it discharges the
sureties in the original debt ; and if received as condi-
tional payment, and such *chose* in action is payable at a
future time, it amounts to a suspension of the right of
the creditor to sue on his original debt ; and if taken
without the consent of the sureties in the original debt,
it discharges them from all liability.   If such *chose* in
action was received as collateral security, though it be
payable at a future time, unless there was an agreement
to postpone the right of suit on the original debt proven
by other evidence direct or circumstantial, the taking
of such collateral security does not suspend the right of
action on the original debt, and therefore does not dis-
charge the sureties from their liability therefor.

In the case before us it is satisfactorily proven, that
the consideration, which induced Burdett to have his
settlement or more properly rough estimate of the amount
due from him to King, was not that he might make an
arrangement whereby the prosecution of the suit on his
bond as sheriff against him and his sureties might be sus-
pended, but only that he might give a lien on his farm
to enable it to be applied to the relief of his sureties,
and thus prevent its application to pay another debt
which he Burdett owed as security.   The five months'
time, on which the single bill given by him to King for
or on account of his indebtedness secured by the deed of·
trust was not either by an express nor by an implied
agreement between the parties designed to operate as a

suspension of the prosecution of the suit against the principal and his sureties then pending. Had it been so intended, the counsel who was prosecuting this suit would certainly have been so told by the parties, as he was present all the time these arrangements were being made, and aided in the making of them, drawing the deed of trust. Burdett was insolvent and could have had no expectation of paying off this large debt in three or four months. He could not have wanted time with this expectation ; and if he had, he could have had much longer time by not making such arrangements, as the judgment against him and his sureties, if prosecuted vigorously could not have been had in three or four months. King, it appears, did not desire specially to make this arrangement. The farm covered by the deed of trust did not, when sold, pay one third of his debt ; and it seems altogether improbable, that he intended to suspend or abandon his suit against the principal and his sureties in order to realize so small a part of his debt, as there is nothing in the record to indicate, that his whole debt was not perfectly secure, but rather the reverse.

We have seen, that the burden of proving by express evidence or by circumstantial evidence, that there was an agreement on the part of King to suspend the prosecution of this common law suit against Burdett and his sureties, rested by law on the sureties, and that such an agreement could not legally be inferred from the mere giving of this single bill payable at a future time and securing it by a deed of trust on the farm. There is not only no express evidence of such an agreement having been made, but the evidence fails to induce us to conclude, that such an agreement could be inferred from the circumstances surrounding the case. On the contrary the conclusion we would draw from the evidence is, that there was no such agreement express or implied, and King's right of action on the bond of Burdett as his deputy was never for a moment suspended.

1880
Special Term.

Sayre *et al.*
v.
King *et al.*

For these reasons we think the judge of the circuit court did not err in dissolving the injunction, which he had awarded ; and that the order made by the judge of the circuit court of Jackson in vacation on the 13th day of January, 1879, must be affirmed, and the appellee, George S. M. King, must recover of the appellants his costs expended in this court and $30.00 damages ; and this cause must be remanded to the circuit court of Jackson to be further proceeded with according to the principles laid down in this opinion and further according to the rules governing courts of equity.

JUDGES HAYMOND AND JOHNSON CONCURRED.

ORDER AFFIRMED. CAUSE REMANDED.