# CHARLESTON.

1873.
January
Term.

GILLILAN *vs.* LUDINGTON.

RICHARD H. GILLILAN, EX'OR OF JOSEPH MYLES, DEC'D, FOR THE USE OF ROBERT S. SHIELDS, PLAINTIFF AND APPELLEE AGAINST SAMUEL C. LUDINGTON, SURVIVING OBLIGOR OF HIMSELF AND THOMAS MCCLINTIC, DEC'D, DEFENDANT AND APPELLANT.

Decided February 21st, 1873.

## SYLLABUS.

A plea under the Statute. Code, ch. 101, for relief of sureties, reciting that A was the security of B, and had given the Plaintiff, who was the payee in a bond, notice in writing, forthwith to institute suit thereon, and that the Plaintiff, notwithstanding said notice, had failed for a long space of time, to-wit: — years, to bring suit thereon, and until after the .death of the principal in said bond, so that the Plaintiff's right to collect said debt of him has been forfeited and is gone, is held to be sufficient.

The creditor to whom the notice should be given is the party having the legal title to the claim and the right to institute suit, and not a party merely claiming to have an equitable ownership.

1873.
January
Term.

A replication that the Defendant, after giving the notice in the plea mentioned, had withdrawn the same, and notified the Plaintiff not to sue as required by said notice, whereby the Defendant remained bound in said bond, is good.

A Plaintiff who has received notice under the Statute, and fails to comply with its provisions by instituting suit within a reasonable time against resident, solvent debtors, and prosecuting it with diligence to judgment and execution, is not at liberty to show that the Defendant has sustained no injury or loss by his omission: not having put that fact in issue by the pleadings.

A Plaintiff is at liberty to reply to a plea under the Statute, by way of avoidance, that he has complied with the requirements of the Statute as contained in the 2d section, setting them out at length.

A new trial will not be granted on the ground of after discovered testimony, when it appears from the affidavits that the after discovered testimony tends only to impeach a witness on the trial, by disproving facts to which he has testified; and especially when it appears that the witnesses proposing to give testimony will speak only from their belief, and not from absolute personal knowledge.


This was an action of debt upon a joint and several bond, instituted in the Circuit Court of Greenbrier county in July, 1867. At the September term, 1867, the Defendant filed two pleas, the one payment, and the other that he was the surety of his co-obligor, McClintic, and that he had given notice under the statute to R. S. Shields, the beneficiary Plaintiff, to sue, and his failure to do so. At the April term, 1871, the Defendant filed a third plea, alleging that he had given notice to Joseph Myles, the Plaintiff's testator, to sue, which he failed to do. The opinion of the Court contains a full statement of these pleas, the replications thereto, objections made by the parties, and the issues thereon. The cause was tried by a jury at the October term, 1871, and they returned their verdict in these words : " We, the jury, find the issue upon the plea of the Defendant, that he gave notice to Joseph Myles to bring suit on the bond in the declaration mentioned and a failure to do so, for the De-

17

fendant; and we find the other issues for the Plaintiff."
The Plaintiff moved the Court to set aside the verdict
*first*, because it was contrary to the evidence, and *second*,
that he had discovered new evidence, in support of which
he filed his own and two other affidavits. One of these
affidavits was made by Reid, who stated " that to the
best of his knowledge and belief, from facts known by
him to be true, Joseph Myles was not in the county of
Greenbrier on the 10th day of September, 1858, nor for
several days prior and subsequent thereto." Another
was made by Stuart and stated, " that Joseph Myles left
the county of Greenbrier to go to Pennsylvania to dis-
pose of cattle, prior to the 6th day of September, 1858,
and that he remained absent from said county until
sometime in the month of November, 1858; that said
Myles was certainly absent from the county on the 10th
day of September, 1858, and prior and subsequent there-
to; that affiant was a partner in the cattle business with
said Myles, at the time aforesaid, and that from memo-
randa and other papers in his possession, and the recol-
lection of facts, he thinks he can not be mistaken in the
fact that said Myles was absent from the county, as afore-
said." The affidavit of the Plaintiff stated, that he had
discovered the facts set forth in the affidavits of Reid
and Stuart since the trial of the cause; that the matters
contained therein were material; that he had no knowl-
edge of said facts prior to or at the time of the trial; and
that he had used due diligence and failed to discover
them until after the trial. The Court overruled the mo-
tion upon the first ground, but sustained it upon the sec-
ond and granted a new trial. To the granting the new
trial the Defendant excepted, and asked the Court to cer-
tify the facts proved and also the affidavits filed in re-
gard to the newly discoverd evidence, which was done.
The other matters involved in the cause, and also the
facts proved and set forth in the several bills of excep-
tions taken by the Plaintiff and Defendant, fully appear
in the opinion of the Court.

The Defendant appealed to this Court.

*Price*, and *Mathews* and *Mathews* for Appellant.

*Dennis* and *Snyder* for Appellee.

The Defendant's plea that he gave notice to Myles to sue, is defective: *First*, Because it does not aver that Joseph Myles was either the *creditor*, owner, or holder of the bond at the time the notice was given. The statute says, the surety may require the "*creditor*" to sue, not the obligee, who often has but a nominal interest in the debt.—Code Va., chap. 146, §4, p. 633.— *Second*, The plea does not aver that the obligors, or either of them, were residents of this State. If they were not residents, the statute did not require the creditor to sue; and *Third*, It does not aver that the obligors, or either of them, were solvent, yet the statute does not require suit if the obligors are not solvent. The plea must set up a complete defence. To make out such a defence under this statute, the Defendant must both plead and prove the existence of all the matters set forth in the statute as the conditions upon which he is relieved from liability. Mr. Robinson, in the 5th vol., of his Practice, p. 784, gives the form of a plea under this statute, in which he avers all those facts. The plea is imperfect and fatally defective without them.

The Court erred in rejecting the Plaintiff's first special replication to the said plea. The facts averred in this replication completely avoid the notice to Myles by showing that Shields, and not Myles, was the creditor and owner of the bond, and that this fact was well known to the Defendant. In fact, the Defendant makes the same averment in his plea.

Taking the questions as they are presented in the Record, our first enquiry is, whether the verdict of the jury is justified by the facts proved and certified? The only issue found for the Defendant was the one made on the plea of notice to Myles under the statute above cited. —Code 1849, chap. 146, §4, p. 587. A failure of the creditor to sue upon the requisition of the surety does

not, at common law, impose a forfeiture of his right to recover from the surety.—Croughton *vs.* Duval, 3 Call, 73; Norris *vs.* Crummey, 2 Rand. 323; Calvert *vs.* Gordon, 14 Eng. C. L. 809. But under this statute the penalty of such failure is an absolute forfeiture of all right to demand the debt from the surety. The statute is, then, both penal and in derogation of the common law, and must, therefore, in accordance with the well established rules of construction, be construed strictly; and a Defendant, in order to avail himself of its protection, must bring himself clearly within its provisions. He must conform to it in every essential. But whether construed strictly or otherwise, do the facts proved sustain the verdict in the case? To make the defence complete the statute requires not only that the surety shall give written notice to the creditor to sue, but there must be a failure on the part of the creditor to bring suit "against every party to the contract, who is a *resident* of this State and not insolvent, in a *reasonable time* after such requisition." A reasonable time is given after the notice to institute suit, and the party to be sued must be a resident in this State and not insolvent. If the party is a non-resident or insolvent, there is no requirement to sue. It is incumbent upon the Defendant, before he can avail himself of a defence under this statute, to prove not only that he was surety, that the debt was due, and that he had given written notice to the creditor to sue, but he must also prove that the obligors were residents in this State and not insolvent, and that the creditor failed to sue in a reasonable time after notice. Has the Defendant in this case proved these facts? The Record shows that the Defendant proved *by a witness* that he was the surety of McClintic upon the bond sued on, and that on the 10th day of September, 1858, he served a written notice on Joseph Myles to bring suit on said bond forthwith. These are all the facts proved in relation to this question, as shown by the Defendant's own bill of

exceptions. The Court certifies that these were all the facts proved on the trial of the case. It is incumbent upon the exceptant to show, affirmatively, the error of which he complains, against every reasonable presumption.—Hume *vs.* Beale, 3 Munf. 226.

This exception contains all the facts proved, yet it contains no proof that the obligors, McClintic and the Defendant, were residents of this State, or that they, or either of them, were solvent at the time the notice was given : nor does it contain any proof that suit was not instituted in a reasonable time after notice given. We think we have shown that each and all of these facts are material to the defence under this statute, yet there was not a particle of proof to sustain any one of them. Nor is there anything in the facts proved to justify this Court in presuming that these facts were shown on the trial. But, for the argument, let us assume that these facts might be inferred by the Court, still the verdict could not be sustained. The proof is that the notice was served on the 10th day of September, 1858 ; that Mc-Clintic was the principal and the Defendant was surety in the bond sued on, and that said McClintic died in March, 1859. The statute, as we have seen, gives the creditor a *reasonable time* after notice to institute his suit. As we have no decisions upon this statute, as to what the Courts may regard as " a reasonable time," we are compelled to resort to the construction given to that phrase in other instances. In reference to the law of assignments of choses in action, the Court of Appeals of Virginia has established it as a general rule, that the assignee, in order to fix his recourse upon the assignor, must sue in a *reasonable time.*—Lee *vs.* Love, 1 Call, 497 ; Thompson *vs.* Govan, 9 Grat., 695. What is a reasonable time has not yet been defined in Virginia as it has been in Kentucky.—2 Rob., Pr., (new ed.,) p. 276. In Kentucky the assignee of a note, *suable in a Circuit Court, has to use reasonable diligence* to obtain a judgment on the note, at the first term after the assignment.

It is not necessary that he should, at all hazards, commence his suit immediately, if the intervening period before the term of Court would admit of delay.—Thomas vs. Taylor, 2 J. J. Marsh. 218; Hume vs. Brown, 3 Dana, 450; McMurray vs. Wood, 9 Dana, 46. In Virginia there is no adjudication which decides that suit must be brought so as to obtain judgment at the first term after the assignment. The rule established by the authorities is, that the assignee, to maintain his action against the assignor, must show that the obligor was insolvent at the time of the assignment of the writing, or when it fell due; or, that he has used *due diligence* to recover from the obligor, and failed.—Barksdale vs. Fenwick, 4 Call, 492; Goodall vs. Stuart, 2 Hen. & Munf. 105; Coiner vs. Hansbarger, 4 Leigh, 452; Peay vs. Morrison, 10 Grat. 149.—What is due diligence depends upon the circumstances of each case.—Barksdale vs. Fenwick, 4 Call, 492; Bronaugh vs. Scott, 5 Call, 78. Assignee delays two years to sue the maker. In the absence of proof that the maker was insolvent at the time, or shortly after, the note fell due, he cannot recover against the assignor.—Thompson vs. Govan, 9 Grat. 695. The assignee may excuse himself for want of due diligence by showing that due diligence would not have altered the case.—Roane J. in Barksdale vs. Fenwick, 4 Call, 503.

Upon the principles established by these authorities, we think we may safely conclude that a suit instituted in the Circuit Court within a reasonable time before the next term of said Court at which a judgment might be obtained after the notice to sue, would have been within a reasonable time. Apply this rule to the facts in this case. By reference to the statute, Acts 1857–8, page 49, it will be seen that the Circuit Courts of Greenbrier County were held, 1858–59, on the 14th days of May and October in each year. The notice to sue was given to Myles by the Defendant on the 10th day of September,

1858, which was subsequent to the September Rules, and, consequently, too late to institute suit and obtain judgment at the October term. The next term, which was the first at which it was possible to obtain a judgment after the said notice, was in May, 1859. To obtain a judgment at this term, the Plaintiff had until the April Rules, 1859, to serve his process, and until the Saturday before the first Monday in April to institute his suit. But the facts proved show that McClintic, the principal obligor in the bond, died in March, 1859. Thus, it became impossible to obtain a judgment against said McClintic, and the Defendant certainly cannot complain that suit was not brought against himself, as the only surviving obligor. It is true there was a County Court held in said County on the 4th Monday of November, at which it is possible a judgment might have been obtained on said bond; but in a debt of the magnitude of the one here sued on, it would be unreasonable and extraordinary diligence to compel the creditor to sue in the County Court. No facts or circumstances are shown in this case to take it out of the general rule of the cases before cited, which require nothing more than ordinary diligence, and that is attained by a suit in the Circuit Court, at the first term after the notice.

Did the Court err in sustaining the motion of the Plaintiff for a new trial, upon the ground that he had discovered new and material evidence? The Defendant proved by *a witness* that, on *the 10th day of September*, 1858, he delivered the notice to sue to Myles *at his granary*. This fact is proved by but a single witness, who states *the time and place* positively. The time of the service of the notice was the essence of the defence, and was fixed by the witness, definitely, from a memorandum made of it at the time of the service of the notice. Consequently, he must have served the notice at the time stated, or he never served it at all. After the trial, the Plaintiff discovered testimony to prove, conclusively,

that Myles had left the County to go to Pennsylvania, to dispose of cattle, prior to the 6th day of September, 1858, and that he remained absent until sometime in November, 1858. It is admitted that a new trial will not be granted upon a discovery, since the trial, of new evidence, if, with *ordinary diligence*, the party might have known and obtained in time, such evidence. In this case the Plaintiff swears, in his affidavit, that he used due diligence; learned of the new evidence after the cause had been submitted to the jury; that he had no knowledge of it, at or before the trial; that by the use of due diligence he had failed to discover the new testimony.

In the case of Verdier *vs.* Hume, 4 H. & M., 479, a verdict obtained at law, on the testimony of a single witness, whose answer when brought into equity is clearly contradicted, was set aside and a new trial granted. In the case at bar, the Defendant relies upon a single witness to prove the notice. The Plaintiff offered affidavits of two disinterested persons, who state facts positively, and no counter affidavits were offered by the Defendant. These facts, then, must be taken as true, and, as admitted by the Defendant; and so taken they are conclusive that no notice had been served on Myles at the time and place stated by the Defendant's witness. This new evidence does not merely tend to contradict the witness, but it proves positively that a material fact, which was essential to make out the Defendant's plea, did not, in truth, exist at all. For the notice was either served on the 10th day of September, or it was not served at any time. The witness was positive as to the date, and if he is in error as to this, his testimony must be entirely disregarded as to the notice.—*Falsum in uno, falsum in omnibus.*

It is scarcely deemed necessary to refer to the only remaining exception of the Defendant, that the Court erred in not dismissing the case, because the costs of the new trial had not been paid within thirty days. At the Oc-

tober term, 1871, the Court did not pronounce a judgment upon the verdict. The statute gives the party, " at or before the next term, to pay the costs of the former trial." Can the Court alter the law, and enact a new provision? We think not. If the party who obtains the new trial fails to pay the costs, " at or before" the next term, after the new trial is granted, does not the statute contemplate some action on the part of the Court? It says, (p. 663, sec. 5, Code of W. Va.,) " the Court may, &c.," (see the Statute.) Does it not also contemplate some action on the part of the opposite party, (the Defendant in this case?) For it says, " on the motion of the opposite party, set aside the order granting it," (the new trial,) and proceed to judgment on the verdict, or award execution for said costs as may seem to it best." Thus the Court, (not the Clerk,) if the costs were not paid, in its sound discretion, might issue execution for the costs, or enter judgment on the verdict, as may seem to it best, and this upon the motion of the opposite party. This question of costs was a matter entirely within the discretion of the Circuit Court, and that Court having exercised that discretion in a manner satisfactory to itself, it is not a matter that can be revised in an appellate Court; and if the conditional order, made at the October term, was erroneous and contrary to the statute, then this Court will conform the order to the statute, and thus affirm the order made by the Circuit Court at the December term.

If the Court should be of opinion that the new trial may not be sustained upon the grounds on which the Court below placed it, yet if the Court committed errors which prevented the Plaintiff from having a fair trial, or this Court finds in the Record other grounds upon which the new trial should have been granted, it will sustain the judgment of the Court granting the new trial. —Pleasants vs. Clements, 2 Leigh, 474.

The jury in this case having found all the issues for

18

the Plaintiff, except the issue of notice to Myles, if this Court should be of opinion that the plea setting up that notice is insufficient, or that the facts proved fail to sustain that issue, then the Plaintiff claims that this Court should render judgment for him, in accordance with the finding of the jury upon the other issues in the case.

PAULL, JUDGE:

The Plaintiff as executor of Joseph Myles, suing for the use of Robert S. Shields, institutes an action of debt against the Defendant on a joint and several bond executed by him and one Thomas McClintic, deceased, for the sum of $1,483.69, in the Circuit Court of Greenbrier county.

To the declaration the Defendant files the plea of payment, and offered the following special plea, to-wit.: "That the Defendant was the security for Thomas McClintic in the bond in the declaration mentioned, as the Plaintiff's testator well knew, and that the said Defendant on the — day of ——, 18—, the said debt being due and payable, gave the said Joseph Myles notice in writing forthwith to bring suit upon said bond, and the Defendant avers that the said Joseph Myles, notwithstanding said notice, failed for a long space of time, to-wit.: —— years, to bring suit thereon, and until after the death of said Thomas McClintic, so that the Defendant saith that the Plaintiff's right to collect said debt of him has been forfeited and is gone." This special plea the Plaintiff moved the Court to reject, which motion the Court overruled, and the plea was filed. Thereupon the Plaintiff replied generally thereto, and tendered two special replications. The first is in substance, that the bond in the declaration mentioned was the renewal of a bond bequeathed by one Robert McClintic to Robert S. Shields, the beneficiary in the action; that the bond in the declaration mentioned was executed to the said Joseph Myles by Thomas McClintic and the Defendant for the sole use and benefit of the said Robert

S. Shields, and this the Defendant well knew at the time of executing said bond, and before giving the notice in the plea mentioned, and that the said Joseph Myles never was the owner of said bond in the declaration mentioned, nor was said Myles the creditor therein. This replication the Defendant moved the Court to reject; the objection was sustained and the replication rejected. The second special replication is; that immediately after giving the notice in said plea mentioned, the Defendant withdrew the same, and notified the said Myles not to sue as required by said notice, whereby the Defendant remained bound in said bond. Objection being made to filing this replication, the motion was overruled, and the replication was filed, and issue joined thereon. To the action of the Court overruling the objection to the special plea, the Plaintiff excepted. And to the action of the Court sustaining the objection to the first special replication, the Plaintiff excepted. General replication having been made to the plea of payment and to the special plea, and general rejoinder to the special replication, the parties went to trial upon the issues thus presented, and also upon another plea and issue (of which I have taken no notice, the same not being relied on for any purpose), and the jury found the issues involving the questions of notice to sue for the Defendant, and the other issues for the Plaintiff.

Before proceeding to notice the subsequent proceedings in this case, it will be proper to dispose of the questions arising upon the pleadings; and the first is the sufficiency of the Defendant's special plea.

The plea avers that he is surety for his co-obligor, and that he gave notice in writing to Joseph Myles, the obligee in said bond, forthwith to bring suit upon said bond, and that said Myles had failed for years to bring suit thereon, and until after the death of his co-obligor, and had thereby forfeited his demand. This plea is filed under the provisions of the Code as found in sections 1

and 2, ch. 101; it is claimed that the plea is defective in not avering that the Plaintiff had not only failed in bringing suit in a reasonable time, but that he had failed to do so against every party to such contract, who is a resident of the State and not insolvent, and had failed to prosecute such suit with due diligence to judgment and execution.

This statute in substance, and even almost in its present form has been in existence in Virginia for many years, and yet no adjudications as to the form of pleadings under it are to be found, and the attention of the Court has been directed to none from any other quarter. We may safely assume, however, that the Courts will not so construe or administer any statute as to relax or tend to release debtors or sureties from their just obligations to those to whom they have been given. On the other hand it will be remembered, that a surety has always been regarded in some respects as an equitable creditor of the same principal, and possessing certain rights and privileges which the creditor himself was bound at his own peril to respect. He could not release any property pledged for the security of the debt, nor extend for a definite period the time for its payment without the surety's consent, otherwise he will be discharged. The statute itself under consideration was made for the "relief of sureties," and is so entitled and is a substitute for the more expensive remedy by bill of *quia timet* in Courts of Equity, and was designed to afford them the means of self protection against loss or prejudice on account of their contingent liability to the creditor. In Wright's Adm'r *vs.* Stockton, 5 Leigh 153, Judge Carr says, in speaking of this statute, "The object of the statute being protection to the sureties, we must, to that end, give it a liberal construction." The plea before us sets out that the Defendant, the surety, has done what the 1st section of the statute requires him to do, and *all* that it requires *him* to do; it omits to

state, beyond reciting the fact that the Plaintiff had failed to institute suit in a reasonable time, and the legal consequence which followed, the further particulars connected with the suit, as mentioned in the second section. But these matters are made by the statute the duty of the creditor, and are supposed to be peculiarly within his own knowledge. He is supposed to know where his debtors reside, whether in or out of the State; whether they are solvent or insolvent, and whether he has prosecuted a suit against them with diligence or not. These are matters more likely to be known to him than to the surety; and if on receiving the notice he has complied with these requirements of the statute, he can readily reply them by way of avoidance to the plea. This is not, in my judgment, from a "liberal" construction of the statute, and a just consideration of the mutual rights and interests of both the creditor and the surety, the one a legal, and the other in some sense an equitable creditor of the same principal, imposing an undue hardship upon the former. The rights and interests of both parties under the statute can in this way be fully maintained. In my opinion, therefore, there was no error in overruling the objection to the plea; and it is deemed sufficient.

The second question arising upon the record is the sufficiency of the Plaintiff's first special replication. This recites in substance that one Robert S. Shields was the equitable or beneficial owner of the bond in suit, and that Joseph Myles, the obligee, never was the owner of said bond, nor was he the creditor therein, and that these facts were known to the Defendant. In contemplation of the statute the creditor, in any contract therein mentioned, is obviously the party having the legal ownership of the debt or demand; one having a right or power to "institute suit," as he is required to do on receiving notice. A surety should not be required to go out in search of equitable owners of a debt or claim, to

whom he shall give his notice, and who would have no right or power to institute suit themselves, or even to compel the legal owner to commence proceedings. No error is perceived in sustaining the objection to this replication. Nor is there error in overruling the objection to the second replication in regard to the withdrawing of the notice. Proceeding now to the subsequent history of this case, a verdict was found on the main issues for the Defendant; and thereupon the Plaintiff moved the Court to set aside the verdict and grant him a new trial. This motion was granted on the Plaintiff's paying the costs of the action incurred at that term, within thirty days from that date, otherwise said verdict shall stand as the judgment of the Court, and the Defendant recover his costs. I am aware of no authority of law vested in the Circuit Court for making such an order. It was the ordinary motion addressed to the Court for a new trial; and section 5 of ch. 138 of the Code prescribes the terms on which it may be granted, and the powers of the Court in relation thereto. In the above order the powers of the Court are not exercised in accordance with the provisions of the statute, at the time therein directed, the Plaintiff having until the next term of the Court within which to pay the costs of the suit. This order being erroneous, no judgment was ever entered upon the verdict.

The next questions arise upon the Plaintiff's bill of exceptions; contending first, that it was incompetent for Defendant by parol evidence to prove that he was the surety of his co-obligor, Thomas McClintic; this exception was waived in the argument; and secondly, that it was incompetent for Defendant to prove by parol, the contents of the notice served upon the Plaintiff to bring suit. The exception is not properly taken in this broad form, for it is certainly competent to do so, when a proper case has been made. From the certificate of facts appearing upon the record, it was shown; first, that these two copies as they were called, of this notice were

1873.
January
Term.

Gillilan,
v.
Ludington.

both signed by the Defendants, and one of which, it was proved, was delivered to the Plaintiff's testator, and the other to the Defendant; these may be regarded as duplicate originals; the loss of the copy retained by the Defendant was proved by his own testimony; without calling upon the Plaintiff to produce the copy, or the original served upon him, it would be competent for the Defendant then to give notice of its contents. 1 Greenleaf 561. The best evidence was the notice itself. This being lost, and no copy being under the control of the Defendant, the next best testimony was that of the witness who saw, and served it upon the Plaintiff. The evidence would seem to be competent under the circumstances, or facts certified.

The remaining questions arise on the Defendant's bill of exceptions. The Plaintiff moved the court for a new trial upon two grounds; first, that the verdict was contrary to the evidence, and secondly, that the Plaintiff had discovered new and material evidence since the trial. The Court being of opinion that the verdict was sustained by the evidence, overruled the motion on that ground, but sustained it on the second, and granted a new trial, and the Defendant excepted. All the facts being certified, this Court may judge of the correctness of the verdict on the facts stated. Slaughter's adm'r. *vs.* Tutt, 12, Leigh 147; and the case of Mathew W. Harrison, ex'or., &c. *vs.* The Farmers' Bank of Virginia, decided at this term.

Taking the plea as sufficient in the form in which it is found in the record, it is clearly proved by the facts, as presented in the certificate; and the evidence fully sustains the verdict. Upon this there was no controversy before this Court, but it was simply contended that *other* facts should have been proved by the Defendant than those embraced in the averments of the plea, as that the Plaintiff had failed to bring suit against residents, &c. But from what has been heretofore said,

this was not incumbent on the Defendant. But it was claimed in argument by the Plaintiff's counsel that the Defendant had sustained no injury from the Plaintiff's omission to bring suit, because it was proved that Thomas McClintic, the principal obligor, had died before a judgment could have been obtained against him in the Circuit Court of Greenbrier County, although it was possible that a judgment could have been had against him in the County Court. The notice was served on Myles, the creditor, on the 10th day of September, 1858, and McClintic died in March, 1859. But I do not think this question properly arises under these statutory provisions. When the notice has been given, and a plea filed to that effect and proved, the forfeiture will inevitably follow and this without any regard to such a question, unless the Plaintiff avers and proves by way of avoidance that he has complied with the requirements of the statute on his part. The Plaintiff, I think, is not at liberty to go into an enquiry of that kind as an assignee may do by way of reply to an assignor who suggests that he has not used due diligence in prosecuting a suit against the maker of a note, not having put it in issue. The only remaining enquiry is upon the propriety of the Court's action in granting a new trial on the ground of after discovered testimony. This was done on the affidavits of the Plaintiff and two other parties, viz.: William B. Reid and John Stuart.

The principles which should govern the Court upon this question appear now to be well settled. It was held in Thompson's case, 8 Grat. 637, as follows: "After discovered evidence, in order to afford a proper ground for a new trial, must be such as reasonable diligence on the part of the party offering it could not have secured at the former trial; must be material in its object, and not merely cumulative and corroborative or collateral; and must be such as ought to be decisive and productive on another trial of an opposite result on the

merits;" and again, "when the sole object and purpose of the new evidence is to discredit a witness on the opposite side, the general rule is, subject to rare exceptions, to refuse a new trial." See also Brown *vs.* Speyers, 20 Grat. 296, and Brugh *vs.* Shanks, 5 Leigh 598. In the latter case the party made an affidavit " that a witness had sworn falsely, and had affiant known that he was to be examined, and what he was to prove, he could have disproved the facts testified by him." But the Court say that a new trial will not be allowed to enable the party to impeach the credit of a witness examined on the trial. After a careful examination of the affidavits appearing in the present record, we do not see that the case is taken out of the operation of these principles. The new testimony, if allowed, would tend simply to disprove the facts established by the testimony of a witness on the trial, by showing that the party on whom the notice was served was not in the county of Greenbrier at that time. This would be, in the language of the Court in 5 Leigh above cited, impeaching the credit of the witness, and does not take the case out of the rule. Moreover, it does not appear from the affidavits that the new testimony, if allowed, would clearly and absolutely contradict the former witness. The new witnesses would testify only from their own belief, not from absolute personal knowledge of the fact.

We deem it unnecessary to notice the affidavit of the Plaintiff.

The Circuit Court on the 11th day of December, 1871, set aside the order made at a former term in regard to the payment of costs, and continued the case for trial, and there is now no judgment on the verdict, which last named order is erroneous, and is reversed and set aside, and the Appellant must recover his costs in this Court against the Appellee. And the Court proceeding to give such judgment as the Court below ought to have given upon the verdict of the jury rendered in the cause, the

Appellant must recover against the Appellee his costs about his defence in the Court below expended.

HAYMOND, President, and MOORE, Judge, concur in the foregoing opinion.