# CHARLESTOWN.

## STATE v. GRANVILLE MCDONALD.

### September 11, 1876.

An indictment for feloniously breaking and entering a dwelling house in the night time. with intent to commit larceny, is good under the twelfth section of chapter one hundred and forty-five in the Code, and may be punished under the provision of the thirteenth section of same chapter.

The words "or other house" in said section twelve are sufficient to embrace "dwelling house."

Query? is such an indictment good under the second paragraph of section eleven of said chapter.

An indictment for common law burglary must charge the breaking and entering to have been done "feloniously and burglariously."

It is a principal cause of challenge to a juror that he was one of the grand jury which found the indictment.

A new trial will not be granted in a criminal case, for matter that is a principal cause of challenge to a juror, which existed before he was elected and sworn as such juror; but which was unknown to the prisoner until after the verdict, and which could not have been discovered before the juror was so sworn, by the exercise of ordinary diligence; unless it appears from the whole case, that the prisoner suffered injustice from the fact that such juror served upon the case.

Writ of error to a judgment of the circuit court of Kanawha county rendered at the November term, 1875, of that court, in a case therein then pending, in which the State of West Virginia was plaintiff and Granville McDonald was defendant.

The facts fully appear in the opinion of this Court.

Hon. Joseph Smith, judge of said circuit court presided at the trial below.

W. A. *Quarrier* for plaintiff in error.

J. H. *Ferguson* for defendant in error.

EDMISTON, JUDGE:

The plaintiff in error was indicted in the circuit court of Kanawha county, on the twelfth of May, 1874. The offence charged in the indictment was, that McDonald, and two others, on the first day of January, 1874, in said county, a certain dwelling house of John T. Reynolds there situate, in the night time, feloniously, did break and enter, with the intent the goods and chattels of said John T. Reynolds, in said dwelling house, feloniously, to steal, take, and carry away, and certain pieces of money did, then, and there, steal, of the sum of $109.85, the property of said John T. Reynolds.

The prisoner demurred to the indictment, but the demurrer was overruled. He then plead not guilty, and a jury was sworn, evidence heard, and a verdict rendered, finding him guilty, and his punishment was fixed at two years imprisonment in the penitentiary. The prisoner moved the court to set aside the verdict, and grant him a new trial, which was overruled. He then moved in arrest of judgment, which was likewise overruled, and the prisoner was then sentenced, according to the finding of the jury.

Upon the trial, after the evidence was heard, the prisoner's counsel contended, before the jury, that the indictment was for burglary, and was punishable as prescribed by the eleventh section of chapter one hundred and forty-five of the code of 1868; but the court, at the instance of the prosecuting attorney, instructed the jury, that said indictment was under section twelve of said chapter, and was punishable as prescribed in section thirteen, to which instruction the prisoner excepted, and this forms the substance of the first bill of exceptions.

58

On the motion for a new trial, the prisoner filed his affidavit, to the effect, that one Amos Burgess, who was a witness against him on the trial, stated, during the progress of the trial, to certain persons, one of whom was Miss Misha Roy, at his boarding house in Charleston, that " he was on Reynolds' side, until he got his suit of clothes," and that he knew nothing of this until after the trial. With his affidavit, he filed that of the said Misha Roy, in which she swears that said Amos Burgess did say, at the time and place above stated, in her presence, and two strangers, in answer to a question put to him, that " he was on Reynolds' side, until he got his suit of clothes."

The State filed the affidavit of said Reynolds, who was the prosecuting witness, that he had learned that Burgess was a material witness, and had him summoned, but that he had never, by any means, direct or indirect, influenced, induced, controlled, or procured the testimony of said Burgess, further than to have him subpœnaed; that he had never made any promise, express, or implied, to said Burgess, in relation to his testimony in the case, and, so far as affiant knew, the testimony of Burgess was entirely free from influence of any kind, and was true.

The prisoner filed his further affidavit, to the effect that J. H. Chamberlain, one of his jury, when he was examined on his *voir dire*, stated, in answer to questions, that he had not made up, or expressed any opinion as to the guilt or innocence of the prisoner; and that he had not been a member of the grand jury by which the indictment was found against the prisoner. When, in fact, said Chamberlain had been a member of said grand jury, which found the indictment, and participated in the proceedings of the grand jury, at the time the indictment was found, and, as affiant was informed, and believed, voted for the finding ; that he had not the slightest information, or suspicion, that said Chamberlain had been a member of the grand jury, until after the verdict had been rendered against him ; that he had exercised all such precaution

1876.
August Term.

State.
v.
McDonald.

in the selection of the jury as he could, reasonably, be expected to do.

He also filed the affidavits of all his counsel, to the effect, that they did not know, nor had they any reason to suspect, or believe, that the juror Chamberlain had been a member of the grand jury which found the indictment, until some time after the verdict was rendered.

The court, on these affidavits, overruled the motion for a new trial, and the prisoner excepted, and this forms the second bill of exceptions.

After the evidence and argument of counsel, and before the jury retired from the box, the prisoner moved the court to instruct the jury "That, before the jury could find the prisoner guilty, they must be satisfied, beyond a doubt, that he committed the crime charged in the indictment." This instruction, as asked, was refused, but the court did instruct the jury, that before the jury could find the prisoner guilty, they must be satisfied, beyond a reasonable doubt, that he committed the crime charged in the indictment." To the action of the court, in refusing the instruction, as asked for, the prisoner again excepted, and this forms the third bill of exceptions.

In considering the demurrer, and the matter contained in the first bill of exceptions, which present, substantially, the same question, it is necessary to examine the eleventh, twelfth, and thirteenth sections of chapter one hundred and forty-five of the code.

The eleventh section provides: "Any person who shall be guilty of burglary shall be confined in the penitentiary, not less than five, nor more than ten, years. If a person break, and enter, the house of another, in the night time, with intent to commit larceny, he shall be deemed guilty of burglary, though the thing stolen, or intended to be stolen, be of less value than twenty dollars.

"12. If a person shall in the night time enter, without

breaking, or shall in the day time break, and enter a dwelling house, or an outhouse adjoining thereto, or occupied therewith, or shall in the night time enter without breaking, or break and enter either in the day time or night time, any office, shop, storehouse, warehouse, banking house, or other house, or any boat or vessel, within the jurisdiction of any county, with intent to commit murder, rape or robbery, he shall be confined in the penitentiary not less than five, nor more than ten years.

13. If any person do any of the acts mentioned in the preceding section, with intent to commit larceny, or any felony other than murder, rape, or robbery, he shall be confined in the penitentiary, not less than two, nor more than ten, years."

It is claimed that this is an indictment founded upon the twelfth section. Therefore, if this section covers the offence charged in the indictment, the demurrer thereto was properly overruled, and the instruction was properly given.

It is conceded by the State here, that this is not a good indictment under the eleventh section, because it does not charge the breaking and entering to be "feloniously and burglariously" done. This may be correct, but we express no opinion upon that point, as it is not necessary to be considered in this case. There may be some doubt as to the sufficiency or insufficiency of this indictment under the second paragraph of section eleven.

What is the true meaning of section twelve? It, when analyzed, provides for and covers the following cases: *First,* if a person in the night time enter without breaking, or in the day time break and enter a dwelling house, or an outhouse adjoining thereto, or occupied therewith, with intent to commit murder, rape or robbery, he shall be confined in the penitentiary not less than five, nor more than ten years.

*Second,* If any person shall, in the night time, enter,

1876.
August Term.

State
v
McDonald.

without breaking; or break and enter either in the day time or night time, any office, shop, storehouse, warehouse, banking house, or other house, with intent to commit murder, rape or robbery, he shall be punished by not less than five, nor more than ten, years imprisonment in the penitentiary.

But by section thirteen, if such person has done any of the said acts, with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be punished by not less than two, nor more than ten, years imprisonment in the penitentiary.

The indictment in this case alleges that the prisoner in the night time, did break and enter into the dwelling house, with intent to commit larceny. It is claimed for the prisoner, that the only offence declared by section twelve, for entering, or breaking and entering, a dwelling house, is that prescribed in the first clause of that section, which is confined to entering in the night time, or breaking and entering in the day time, with intent to commit murder, rape, or robbery. And that he cannot be indicted under sections twelve and thirteen, for entering a dwelling house, with intent to commit larceny, because the breaking and entering, in the night time, a dwelling house with intent to commit larceny, or any felony, is burglary, and is covered by the eleventh section, and that the legislature could not have intended to authorize the same acts to be punished either as burglary, or as house breaking, and prescribe different punishment for the same acts, according to the election of the prosecuting attorney, as to which section he chooses to frame his indictment. And, in further support of this view, he claims that this indictment does not come within the words of section twelve.

That the provision that, "if a person shall in the night time, enter, without breaking, or break and enter, either in the day time, or night time, any office, shop, storehouse, warehouse, banking house, or other house, with intent," &c., means "other house" than dwelling house, as

well as others than those just enumerated. That as section eleven, covers burglarious breaking and entering a dwelling house; and as the first clause of section twelve, covers entering a dwelling house in the night time without breaking, as well as breaking and entering in the day time, such dwelling house, that therefore the term "other house" in section twelve, cannot embrace and cover a dwelling house. The second clause or provision in section twelve, covers the entering, without breaking, in the night time, or the breaking and entering in the day or night time, any shop, &c., or "other house," and would seem to cover and embrace any "other house" than those that have been enumerated, and to which the same provisions apply. These provisions would seem to apply to all houses, whether expressly enumerated or not, because they apply expressly to those specified and as they apply to them, "or other house," not enumerated, they would apply to a dwelling house, which is not enumerated by force of the words or "other house."

It is true that this construction of sections twelve and thirteen, makes a statutory offence, with all the ingredients of burglary, or, in other words, it makes statutory burglary, and allows the smaller punishment prescribed by section thirteen, when the intent is to commit larceny, or any felony other than murder, rape, or robbery, and I do not see that there can be any good reason assigned why the legislature might not so intend; for all who have experience in trials for crimes, well know the different circumstances under which they are shown to be committed. Some are attended by the most aggravated circumstances, while others have circumstances attending them, that mitigate the offence much. Therefore to allow a discretion in the officer, who has the unpleasant duty of prosecuting persons charged with the commission of crime, the right at his discretion, to prosecute as his judgment indicates, cannot be objectionable, but would seem to be entirely proper. If the evidence shows the case to be one attended by aggravating cir-

cumstances, he can so frame his indictment as to impose upon the guilty party punishment commensurate to his act. But, on the contrary, if the prosecuting attorney finds from the evidence, that there are facts and circumstances in the case, which ought to mitigate the offence, he has the power, by the selection of the remedy, to leave it in the power of the jury to give the prisoner the benefit of such circumstances.

If we look to the history of the legislation on this subject, we can gather some further assistance in the construction of this section. In the Code of Virginia of 1849, we find by section twelve, chapter one hundred and ninety-two, the same provisions contained in section twelve of our code, except after the words " or other house," the words were added, " not adjoining to, or occupied with a dwelling house," and the punishment should not be less than three, nor more than ten years. These words would, necessarily, exclude a house, "adjoining to, or occupied with, a dwelling house," and would leave the words "or other house" to mean any other house than those enumerated and those excluded. The Legislature of Virginia, on the twenty-ninth day of March, 1858, amended and re-enacted section twelve of chapter one hundred and ninety-two, so as to read exactly as before, with the exception that after the words, "or other house," they omitted the words " not adjoining to, or occupied with a dwelling house."

This section, so amended, was brought into the code of Virginia, of 1860, and our Legislature just copied it as they found it in the code of 1860, except they increased the minimum of punishment to five, instead of three, years. So that, in the Code of 1849, the words "or other house" were qualified; but by the amendment, that qualification was removed, leaving them to receive the construction that they would seem to be entitled to, without any limitation or restriction.

And as I have said that the second class of cases provided for in section twelve, is for one entering in the

night time, without breaking, or breaking and entering, in the day or night time, into any office, shop, storehouse, warehouse, banking house or other house, the term "or other house" must mean any house not enumerated above.

The provisions in section twelve, as to a dwelling house, are confined to entering in the night time, without breaking, or breaking and entering in the day-time. There is no provision for breaking and entering in the night time, as there is in regard to the office, shop, &c., "or other house," so that the dwelling house would be embraced, by this construction, in the terms and provisions of this second class of offences.

There can be no doubt but the breaking and entering in the night time, into a house "adjoining to, and occupied with, a dwelling house," would be embraced by section twelve, by force of the words "or other house," because the Legislature removed those words from the section, when they operated to exclude them from the operation of section twelve.

The bill of exceptions to the opinions of the court, in overruling the motion for a new trial, is based upon the ground that one Chamberlain, a member of the jury for the trial of the prisoner, was a member of the grand jury that framed the indictment, and that this fact was not known to the prisoner, nor his counsel, until after the verdict was rendered. In this case it appears, that the juror stated, on his *voir dire*, that he had made up, and expressed, no opinion as to the guilt or innocence of the prisoner, and that he had not been upon the grand jury that found the indictment, and thus showing himself a qualified juror, his name was placed upon the panel of twenty, from which the prisoner struck off eight, not including said Chamberlain in the said eight, so that he constituted one of the twelve who were sworn as the jury. After the verdict was rendered, the fact that Chamberlain was on the grand jury was discovered, according

to the affidavit of the prisoner. It was also unknown to the prisoner's counsel. The State makes no attempt to explain the reason why the juror had so acted or sworn. But the case comes here, on exceptions taken to the opinion of the court, on these facts, without any explanation. There are many cases decided in the General Court of Virginia, as well as some by the Supreme Court of Appeals, upon applications made for new trials, on the ground that a juror ought to have been rejected, and would have been so rejected, if the facts had been known at the time of his selection, that were discovered after the verdict, and in the most of these cases the motions have failed. Smith's case, 2 Va. Cases, 6; Poore's case, Id. 4, 74; Kennedy's case, Id. 510; Brown's case, Id. 516; Hughes' case, 5 Ran.; Jones' case, 1 Leigh. 598; Hailstock's case, 2 Gratt.; Heath's case, 1 Rob. Rep. 735; Curran's case, 7 Gratt., 619; Dilworth's case, 12 Gratt.; Bristow's case, 15 Gratt. 634.

The cases of Dilworth and Bristow were motions based on the fact that a grand juror had been allowed to become a juror for the trial, without the knowledge of that fact, on the part of the prisoner, until after the juror was sworn, and in Bristow's case, not until after the verdict. There can be no doubt, that if it appears that a man summoned as a juror, for the trial of a prisoner, has been upon the grand jury that found the indictment, he must be rejected. And if the juror, in this case, had stated, on his voir dire, that fact, he would have been excluded; but he stated that he had not been upon the grand jury, no doubt innocently, and was, therefore, not even objected to by the prisoner.

The rule established as early as Jones' case, 1 Leigh, and followed since, is this: When the prisoner excepts after trial, for cause existing before the juror was elected and sworn, it is matter addressed to the discretion of the court; in the exercise of this discretion, the court ought to consider the whole case, and be satisfied that justice has been done, and it is said, that in applying this rule

the court regards, with extreme jealousy, all attempts to set aside verdicts on the ground of objections to jurors, existing before they were sworn; and that a verdict will not be disturbed for any such cause, unless it appears to have operated so as to inflict injustice upon the prisoners. *Heath v. Commonwealth*—Curran's case *supra*; Bristow's case, 15 Gratt.

In Bristow's case above, Judge Robertson, who delivered the opinion of the court, says on page 649, "I think, therefore, if it be conceded that the prisoner in this case was ignorant, until after verdict, that Wayne was a member of the grand jury, and that he could not by an exercise of proper diligence, have sooner ascertained the fact, that the court was not bound to set aside the verdict, and grant a new trial, because Wayne was also upon the petit jury unless it appeared that his serving on it caused injustice to be done to the prisoner."

The principal difference between that case and this, is that the juror in Bristow's case was not asked the question, if he had been a member of the grand jury, and also in that case his affidavit was filed, in which he stated that he had forgotten the fact, when examined as a juror that his mind was free to act and did act alone upon the evidence introduced upon the trial, and that nothing that had occurred before the grand jury, had any influence upon his mind in deciding the case.

In this case, the juror stated on his *voir dire*, that he had not made up, and expressed, an opinion as to the guilt or innocence of the prisoner, and that he had not been a member of the grand jury.

If he was a respectable man, and one regarded as truthful, and no doubt he was, these answers were well calculated to mislead the prisoner, and his counsel, and to throw them off their guard in looking into the fact that would, if known, have excluded him from the jury. The failure to give any explanation by the juror, is as I think, a matter of negligence in the prosecuting attorney, that does not place the cause or the juror in such

light, as they ought, no doubt, to occupy. For, unexplained, the juror is convicted of mistating a fact under oath, which also shows that he must have made up an opinion as to the guilt or innocence of the prisoner. Being a grand juror, if he properly discharged his duty as such, he must have made up his opinion upon the testimony introduced before that body. All this he might have forgotten, when examined as a petit juror, and he might have been able to explain his seeming inconsistent position on these points, but this is not done. This is therefore a much stronger case in favor of a new trial than any that I have examined. And if the question was an open one, I should feel compelled to award a new trial.

But it is a part of the rule, established by the courts of Virginia before our separation, that it must appear, that "his, (Chamberlain's,) serving on the jury, caused injustice to be done to the prisoner." The prisoner chose to submit this matter to the circuit court on such evidence as he had furnished in his affidavits, which do not tend to show that he did suffer any *actual injustice*; and has brought his case here on exceptions, without furnishing any evidence by which this Court can see that such was the result, we must hold the ruling of the circuit court to be correct on the question. It was the duty of the court to see that the prisoner had a trial by an impartial jury, and unless the court was satisfied from all that appeared before it, that the prisoner had such trial, it was the duty of that court to set aside the verdict; but if the court thought, from all that did appear in the case, that the prisoner had a fair and impartial trial, then it was its duty to overrule the motion. The court did so rule, having heard all the evidence in the case, and we are to presume that decision correct, and that, especially so, when no evidence has been certified to us, showing, or tending to show, that the prisoner suffered injustice from the fact that Chamberlain was upon the jury. The prisoner, by his counsel, waived the matter

1876.
August Term.
[State
v.
McDonald.

contained in the third bill of exceptions, as it is clear that there was no error in the ruling of the court.

I therefore think that the prisoner has failed to show such a case as would enable this Court to reverse the judgment of the circuit court, and that the same must be affirmed.

The other Judges concurred.

JUDGMENT AFFIRMED.