# Wheeling.

## ZICKEFOOSE *v.* KUYKENDALL.

(Absent, JOHNSON, JUDGE).

Decided November 17, 1877.

1. A new trial should not be awarded by a court of equity, because of after-discovered evidence, unless such evidence is not only material, but such as ought to produce an opposite verdict on the merits of the case, and unless it also appears that the new evidence is such, that reasonable diligence on the part of the party asking the new trial could not have secured it on the former trial.

2. Nor should such new trial be awarded, because since the trial it has been ascertained that one of the jurors was not a citizen and resident of the county a year before the trial; when neither party, when the juror was sworn, objected to his serving as a juror, and when it does not appear that the party applying for the new trial was in any manner injured by the juror serving on the jury; and when it further appears that such party had such knowledge of the juror before he was sworn, as made it grossly negligent in him to fail to inquire before he was sworn as a juror into his qualification as such.

1877.
Special Term.

An appeal from, and *supersedeas* to a decree of the circuit court of Ritchie county, rendered on the 28th day of April 1876, in a chancery cause in said court then pending, wherein A. W. Zickefoose was plaintiff, and S. E. Kuykendall was defendant, granted upon the petition of said plaintiff, below.

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the decree complained of.

GREEN, President, who delivered the opinion of the Court, furnishes the following statement of the case:

A. W. Zickefoose brought an action of debt, in the circuit court of Ritchie county, on what purported to be a valid obligation of S. E. Kuykendall, dated March 15, 1875, promising to pay Zickefoose $435.00, on or before May 1, 1875. This alleged obligation purported to be witnessed by Wm. F. Welt, and Asburn F. Mullinax. The defendant, Kuykendall, pleaded *non est factum*, and that the obligation was made by some person without his authority, and without any consideration whatever, and by a conspiracy between the plaintiff and the alleged attesting witness, to cheat and defraud him. The case was tried at the October term 1875; and the jury found a verdict for the defendant; and the court rendered a judgment thereon for the costs, against the plaintiff. On this judgment an execution was issued for the costs, $68.65, on November 1, 1875. G. W. B. Martin was on the jury that found this verdict. On January 20, 1876, A. W. Zickefoose presented to J. M. Jackson, judge of the fifth judicial circuit, his bill, praying that S. E. Kuykendall, Benjamin F. Mitchell, sheriff of Ritchie county, and all others, might be enjoined from enforcing said execution, and asking that this verdict might be set aside, and a new trial awarded, and for general relief. Judge Jackson refused to grant this injunction, and endorsed his refusal on the bill. It was then presented to J. S. Huffman, a judge of the Supreme Court of Appeals of West Virginia, who awarded the injunction on January 27, 1876. The bill sets forth the obligation, which was the basis of the common law suit, the verdict of the jury, the judgment of the court, and the issuing of the execution, but fails to state the pleadings, or to state distinctly what was the character of the issue, which the jury was sworn to try. The bill then states in general terms, that since the rendition of said judgment the complainant had discovered testimony, which in its character, would produce on another trial an opposite result

1877.
Special Term.

Zickefoose
v.
Kuykendall.

on the merits; that this testimony is material in its object, and not merely cumulative, corroborative, or collateral, and that he believes it ought to produce on another trial an opposite verdict. He sets forth in the bill this after-discovered evidence, which he is informed by the witnesses themselves, is as follows: "L. D. Starkey and Walker informed him, since the trial of said cause, at a commissioner's sale in November last, that he, said Starkey, went to Parkersburg in April 1875, for the purpose of borrowing some money of S. E. Kuykendall; that he met said Kuykendall in his store, as well as the complainant now recollects, and after passing the time of day he, (Starkey), made known his business to said Kuykendall, viz: that he desired to borrow some money for a short time; whereupon said Kuykendall told him he would like very much to accommodate him, but he was pressed for some money which was due A. W. Zickefoose, about the 1st of May 1875, amounting to $435.00, which he must pay, and in addition to which he was compelled to go for goods, and would be bound to use all his money, and therefore he could not accommodate him, which he would do, if it was not for the circumstances mentioned; that Walker was present, and heard this interview between Kuykendall and Starkey, and informed the complainant thereof."

The bill alleges that the complainant used all diligence before and after the commencement of the said trial of the common law suit, in order to find out if Kuykendall had admitted the execution of said obligation to any one after the date of its execution, or admitted he owed the debt, as Kuykendall denied the execution of the same as well as the consideration thereof.

As a further ground for asking the relief prayed for, he alleges that G. W. B. Martin, one of the jurors who rendered said verdict, was a non-resident of West Virginia, and of Ritchie county, and that since the trial the complainant learned this information by accident from the father-in-law of said Martin, and that he was totally

ignorant of the non-residence of Martin till after the trial; and that his counsel also informs him that he, too, was ignorant of it till after the adjournment of the court that rendered the judgment. "And that it never occurred to his counsel that Martin was on the jury." Kuykendall and said sheriff of Ritchie were made defendants to this bill. The bill was sworn to and was answered by Kuykendall on oath. He says that said obligation was a base forgery and he never executed it and received no consideration for its execution. He denies that the complainant often dunned him for its payment, or that he ever knew of its existence till notified by counsel it was in his hands for collection. He sets forth in his answer the pleading in the common law suit, and that issue being joined, and after a full, fair, and impartial trial the jury returned a verdict for him, and the court a judgment thereon. He says that on the trial the complainant and both the attesting witnesses testified that they saw him execute this obligation. He says that Starkey was summoned as a witness by the complainant and sworn as such, but never examined. And he says that what is stated in said bill as to what Starkey and Walker will prove is utterly false in fact. That he never had any such conversation with Kuykendall as is alleged in the bill, and does not know who Walker is, who is said to have been present at this pretended conversation, as his first name is not given in the bill. That he did not even see Starkey in April 1875; that in June 1875, he did come to his store drunk, and wanted to borrow money, but nothing was said about the complainant or about his owing the complainant; it was after this obligation was in the hands of an attorney for suit, and after he (Kuykendall) had refused to pay it. Kuykendall in answer further states that he does not reside in Ritchie county, but that the complainant did; that he is informed and believes that the juror was a resident of said county, and a qualified juror; that he had lived in said county eight or ten years, except for a short time when he was in the west; that

both the complainant and his counsel in the common law suit knew him well, and knew as much about his place of residence at the time of his trial, as they do now, and ought then to have objected to him as a juror, if they believed him not qualified.    This answer was replied to generally.

The depositions all taken by the complainant prove, that at the trial of the cause Starkey was present as a witness for the plaintiff to prove Kuykendall's handwriting to the obligation; but that the court excluded him and others as witnesses, because the complainant, Zickefoose, did not offer to examine them till after the defendant's testimony was through; that the court instructed the jury, that the plaintiff must prove on the issue joined, that the obligation sued on was given for a consideration; and on this instruction the jury found for the defendant, the plaintiff having failed to prove that the obligation was given for a consideration to their satisfaction; that the juror Martin, had resided in Ritchie county prior to the spring of 1872; that he then went west with his family to reside; that in the fall of 1874 his family returned to Ritchie county to reside permanently; that Martin himself came back in May 1875; that when he came back he did not intend to stay away any longer than he could raise money to go back; but that recently since the trial he had made up his mind to remain a few years; that he was not on the regular panel of the jury, but was summoned on the jury as a by-stander; that he did not wish to serve, and did not think himself qualified as a juror; but neither the court nor counsel asked him any questions about his qualifications; he was one of the jurors who for a time hung the jury, being opposed to finding a verdict at first for the defendant, but was induced to do so because the plaintiff had not proven satisfactorily any consideration for the obligation sued upon.

The complainant proved that he did not know the residence of the juror Martin till after the trial, though he ad-

mits he knew him slightly and had frequently seen him after his return from the west. And it was proven that the juror lived in the same village with the attorney for the complainant and within a hundred yards of him; and that he knew him well. The complainant also proved that Starkey told him after the trial, that in April 1875, at Kuykendall's store in Parkersburg, he asked Kuykendall to lend him some money in the presense of Mr. Walker, who lives in Calhoun county'; that Kuykendall replied he was going after goods soon and he owed A. W. Zickefoose some money, which he would have to pay the first of May, and could not lend him any money; but he did not recollect whether Starkey said how much money Kuydendall said he would have to pay Zickefoose. Starkey's version of this conversation is, that between the 1st and 10th of April 1875, in Kuykendall's store, when he went to borrow money of him, Kuykendall said he could not lend him any, that he had to pay Zickefoose some money, which he had written to him he wanted; that Kuykendall might have named the amount, and when he had to pay it, but he did not recollect it; and that to the best of his recollection, no one was present at this conversation but Kuykendall and himself. He further states that he did not tell Zickefoose this conversation before the trial, because he was not friendly with him; when he summoned him to prove the pencil writing of Kuykendall, he told him he would rather not be summoned; and he says it is very uncertain whether he would have told him of this conversation then, if he had questioned him about it. He told him after the trial at commissioner's sale, because he thought the case was disposed of.

The cause was heard on April 26, 1876, when the court dissolved the injunction and dismissed the bill at Zickefoose's costs. To this decree a *supersedeas* was allowed, and from it this appeal is taken.

*R. S. Blair*, for appellant.

*C. C. Cole & W. L. Cole,* for appellee :

1. The disqualification of one of the jurors, who rendered a verdict in an action at law, is not sufficient ground to authorize a court of equity to grant relief against the judgment on such verdict, in the nature of a new trial; unless it appear that such disqualification was unknown to the party complaining, and that he could not have discovered it by the use of due diligence prior to the trial at law; and that he was prejudiced by such disqualification : Acts 1872–3, chapter 47, §34; *Parsons* v. *Harper,* 16 Gratt. 64 ; *Bristow's case,* 15 Gratt. 634; *Booth's case,* 16 Gratt. 519 ; Hilliard on New Trials, pp. 66, 67 and 68 and authorities there cited.

2. A court of equity will not interfere to grant relief against a judgment at law, in the nature of a new trial, upon the ground of after-discovered evidence, unless it appear that the party complaining, was ignorant of the existence of such evidence at the time of the trial at law, and that he could not have discovered it before such trial by the use of due diligence. Such evidence must be not merely cumulative, corroborative and collateral, but material in its object, and such that it ought to produce an opposite result on the merits, on a new trial : *Gillilan* v. *Ludington,* 6 W. Va. 128 ; *Campbell* v. *Lynn & Co.,* 7 W. Va. 665; *Arthur* v. *Chavis,* 6 Rand. 147 ; 2 Rob. (old) Prac. 213 ; *Griffith* v. *Thompson,* 4 Gratt. 147 ; *Slack* v. *Wood,* 9 Gratt. 40; *Brown* v. *Speyers,* 20 Gratt. 296 ; *Read's case,* 22 Gratt. 946 ; 2 Story's Eq. Jur., §§887 and 888 ; Hilliard on New Trials 452.

GREEN, PRESIDENT, delivered the opinion of the Court :

The question raised by this record is : When should a court of equity interfere with a judgment at law, by awarding a new trial of the matters in controversy because of newly discovered evidence. It is admitted that after-discovered evidence, to afford a proper ground fo

awarding a new trial, whether the application be made to a common law court, or to a court of equity, must (1st) have been discovered since the former trial; (2nd) be such as reasonable diligence on the part of the party seeking the new trial could not have secured at a former trial; (3d) be material in its object and not merely cumulative, corroborative or collateral; (4th) must be such as ought to produce an opposite result on the merits: *Read's case*, 22 Gratt. 946; *Adams* v. *Hubbard*, 25 Gratt. 129; *Slack* v. *Wood*, 9 Gratt. 53; *Brown* v. *Speyers*, 20 Gratt. 296; *Gillilan* v. *Ludington*, 6 W. Va. 128; *Arthur* v. *Chavis*, 6 Rand. 142.

There is sometimes some difficulty in applying these admitted rules; but there is no difficulty in this case. The evidence brought forward now as a ground for granting a new trial, while it was discovered after the former trial, is not such as by reasonable diligence the defendant could not have secured at the former trial; it is not material in its object; and it is not such as ought to produce a different result at the trial upon its merits. The complainant alleges in his bill: "that he used all diligence before and after the commencement of the trial, in order to find out if Kuykendall had admitted the execution of said obligation to any one after the date of its execution, or had admitted he owed him the debt." The proof however offered by himself, not only fails to prove this allegation, but proves the reverse.

The plaintiff, in his deposition, proves that before the trial, "he understood that Kuykendall and the plaintiff's witness, Starkey, had done a good deal of business together, and he asked him whether he would know Kuykendall's handwriting if he saw it;" he accordingly summoned him as a witness to prove Kuykendall's handwriting, and he attended the trial as a witness for that purpose. Yet he failed to ask him if Kuykendall ever admitted to him that he owed this debt. He says he tried with diligence to ascertain whether Kuykendall ever made such admission; but he neither proves by

himself, nor by any one else, that he ever made any in-

quiry on the subject. If he made any such inquiry,
would it not naturally have been made of his witness,
Starkey, who he understood had done a good deal of
business with Kuykendall. Yet he failed to make any
such inquiry of him; nor does he pretend to offer any
evidence to show he made such inquiry of any one. His
attention being, as he admits, directed to the importance
of making this inquiry, he was certainly guilty of negli-
gence in not making it of a witness present at the trial,
to whom such an admission would as likely to have been
made as to any one else.

Again—The evidence of this witness, Starkey, is not
such as ought to have produced an opposite result, had
the complainant examined him. So far is it from being
evidence of this character, it does not amount to materi-
al, or even pertinent evidence upon the issues tried by
the jury. If it had been offered at the trial, the court
ought to have excluded it from the jury, as having no
tendency to prove either that Kuykendall executed the
obligation sued on, or that he had received any considera-
tion therefor from Zickefoose. He says that about a
month before this obligation became due, Kuykendall told
him he would not lend him money, "as he had to pay
Zickefoose some money, and he had received a letter from
him that he wanted the money. Does this loose state-
ment even tend to prove that he had executed a bond to
Zickefoose for $435.00 payable some thirty days after this
conversation?" Can it reasonably be regarded as having
any reference to the debt, or alleged debt of $435.00, not
due for near thirty days? The witness does not say how
much money he wanted to borrow, nor did Kuykendall
say how much money he owed Zickefoose. It might
have been some trifling amount arising out of some oth-
er transaction. There is nothing whatever to connect it
with the subject matter of controversy before the jury,
and while, before it could properly be even admitted to
go to the jury, it was incumbent on Zickefoose to show

it had some relation to this controversy, he not only failed to do so, but what Kuykendall is alleged to have said, would seem to show that it could not have referred to this alleged debt of $435.00. For he stated that Zickefoose had written him he wanted the money; the fair inference is that the money to which Kuykendall referred, was money then due to Zickefoose, and not money which would not become due for near thirty days. It seems to me that such evidence would be inadmissible; but if it should have been admitted if offered, it certainly was not such evidence as ought to have caused the jury to render a verdict for the plaintiff in that suit. It certainly bore very remotely, if at all, upon the questions in controversy before the jury.

I have thus far regarded the statement of this witness as worthy of confidence. But there is in the record much that would weaken his testimony, and which would have rendered it improper to have awarded a new trial, even if it had been much more material. This witness is directly contradicted by the complainant himself. In his deposition the complainant says expressly that this witness told him that William Walker was present at this conversation; while the witness himself says no one but Kuykendall was present. Again, the complainant says in his deposition that this witness told him that Kuykendall said he had this money to pay the first of May; the witness, on this very material point, in his deposition says, he does not recollect that he either mentioned the amount or the time it was to be paid. In the bill sworn to by the plaintiff, he says that this witness told him that Kuykendall said, "he was pressed for some money which was due Zickefoose about May 1, 1875, amounting to the sum of $435.00, which he must pay." If he, Starkey, made such a statement to the complainant, it was in all probability untrue, as he made a very different statement when examined as a witness, and this would make it questionable whether even the statement made by him when examined as a witness was true.

Kuykendall in his answer on oath says, there is not one word of truth in any part of his statement. In the case *Arthur* v. *Chavis*, 6 Rand. 147, Judge Carr uses this language: "The danger of fabrication is one of the strongest objections to granting these new trials for after-discovered evidence, especially when that evidence does not consist of written documents, but of *viva voce* testimony. On a trial at law all the strength and weakness of the case is disclosed. To suffer the loser, after this to hunt up evidence and get a new trial on the bare statement that he did not know of it before, would be to hold out a a strong and dangerous temptation to subornation of perjury" The mischief such a practice is to some extent exemplified in this cass, but much more exemplified in the case in which Judge Carr uses this language.

The remaining question in this case is : Ought a new trial to be awarded, because Martin served on the jury ? It is admitted that, if the complainant or his counsel, either knew, or by the use of reasonable diligence ought to have known, the facts which it is now claimed rendered him incompetent as a juror, that this court ought not to reverse the court below and award a new trial. And this admission concludes the case, for it it obvious from the evidence that, if the complainant did not know these facts, he or at any rate his counsel could have known them by the use of the least possible diligence. The facts supposed to render him incompetent, were notorious facts known to the entire community necessarily. The only matter affecting his competency, which was not known to a large portion of the population of Harrisville, where this suit was heard, necessarily, from its character, was the intention with which the juror, Martin, moved west, and his intention when his family, and when he himself returned to Harrisville. This we have no reason to believe, he kept secret. But this intention might have been unknown to the complainant and his counsel. But knowing

the fact that he had gone west, if either the complainant or his counsel had had any objection to his sitting on the jury, they could at the time of the forming of this jury, by the exercise of the least possible diligence have ascertained this intention. For they had but to ask the juror, when it would have been fully discovered. The attorney, who lived within one hundred yards of this juror and knew him well, must have known when he went west, and when he returned; and if he objected to his serving on the jury, because he had not been living in the county sufficiently long, or because his residence here was of a temporary character, he should have inquired of the juror the character of this residence. The inference is, that the complainant's attorney had no objection to his sitting on the jury. And this conclusion is fortified by the fact, that he was one of the jurors who hung the jury for a time, being at first unwilling to render a verdict for the defendant. And this fact alone would be ample reason for refusing a new trial, because this juror was on the jury, even though the incompetency of Martin had been unknown to both the complainant and his counsel before the trial, and they could not have discovered that he was incompetent as a juror by the use of ordinary diligence. For it has been decided by this Court, in the case of *The State* v. *McDonald*, reported in 9 W. Va. 456, as well as in the case of *The State* v. *Strauder*, 11 W. Va. 745, that even in a criminal case a new trial will not be granted for matter, that is a principal cause of challenge to a juror, which was unknown to the prisoner till after the verdict, and which could not have been discovered before the jury was sworn, by the exercise of ordinary diligence; unless it appears from the whole case that the prisoner has suffered injustice from the fact that such juror served upon the case. It certainly does not appear that the prisoner suffered injustice in this case from the fact, that Martin served on this jury. It

was incumbent on the complainant to show that he suf-fered injustice, but so far from his so doing, it is proven that the presence of Martin on the jury had only the effect of delaying the rendition of the verdict against him. This testimony of the juror as to what occurred in the jury-room is, I think, admissible. Such evidence is generally admissible to support, though not to assail, a verdict : see Judge Lee's opinion, *Koiner* v. *Rankin,* 11 Gratt. 420. But it is in this case immaterial whether the evidence of the juror in relation to what passed in the jury-room be received or rejected ; for it is settled in this State, that a party asking a new trial must show, that he has suffered injustice from the service on the jury of a juror to whom he could have objected : see *State* v. *McDonald,* 9 W. Va. 456, and *State* v. *Strauder,* 11 W. Va. 745. Excluding the evidence of this juror, there is not the slightest ground to suspect, from anything appearing in the record, that the appellant has suffered any injustice from Martin's serving on the jury.

The decree of the circuit court of April 28, 1876, must be therefore affirmed, with costs and $30.00 damages.

Judges HAYMOND and MOORE concurred.

DECREE AFFIRMED.